NF

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

RECEIVED

FEB 2 1 2020 AM

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Ellis P. Lee )
)
)
)
)
(Name of the plaintiff or plaintiffs) )
)
v. )
)
Niagara LaSalle )
Corporation )
)
)
)
(Name of the defendant or defendants) )

CIVIL ACTION

1:20-cv-01278
Judge: Charles P. Kocoras
Magistrate Judge: Young B. Kim

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is Ellis P. Lee of the

county of Cook in the state of Illinois .

3. The defendant is Niagara LaSalle Corporation , whose

street address is 1412 - 150th Street ,

(city) Hammond (county) Lake (state) Indiana (ZIP) 46327

(Defendant's telephone number) (877) - 289-2277

4. The plaintiff sought employment or was employed by the defendant at (street address)

Diameters South (city) South Chicago Heights

(county) Cook (state) IL (ZIP code) 60411

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5. The plaintiff [*check one box*]

(a) ☐ was denied employment by the defendant.

(b) ☐ was hired and is still employed by the defendant.

(c) ☒ was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about,

(month) May , (day) 06 , (year) 2011 .

7.1 *(Choose paragraph 7.1 or 7.2, do not complete both.)*

(a) The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☐ *has not* ☒ *has* filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

(i) ☒ the United States Equal Employment Opportunity Commission, on or about

(month) June (day) 10 (year) 2011 .

(ii) ☐ the Illinois Department of Human Rights, on or about

(month)_____ (day)_____ (year)_____.

(b) If charges *were* filed with an agency indicated above, a copy of the charge is

attached. ☒ YES. ☐ NO, **but plaintiff will file a copy of the charge within 14 days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

7.2 The defendant is a federal governmental agency, and

(a) the plaintiff previously filed a Complaint of Employment Discrimination with the defendant asserting the acts of discrimination indicated in this court complaint.

2

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

☐ Yes (month)_____ (day)_____ (year) _____

☐ No, did not file Complaint of Employment Discrimination

(b) The plaintiff received a Final Agency Decision on (month)_____
(day) _____ (year) _____.

(c) Attached is a copy of the

(i) Complaint of Employment Discrimination,

☐ YES  ☐ NO, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☐ YES  ☐ NO, but a copy will be filed within 14 days.

8. *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐ the United States Equal Employment Opportunity Commission has not issued

a *Notice of Right to Sue.*

(b) ☒ the United States Equal Employment Opportunity Commission has issued a

*Notice of Right to Sue*, which was received by the plaintiff on

(month) December (day) 02 (year) 2019 a copy of which

*Notice* is attached to this complaint.

9. The defendant discriminated against the plaintiff because of the plaintiff's [*check only those that apply*]:

(a) ☐ Age (Age Discrimination Employment Act).

(b) ☐ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

3

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c) ☐ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☒ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791.

12. The defendant [*check only those that apply*]

(a) ☒ failed to hire the plaintiff.

(b) ☐ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☐ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☐ failed to stop harassment;

(g) ☐ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☐ other (specify):_____

_____

4

_____

_____

_____

_____

13.    The facts supporting the plaintiff's claim of discrimination are as follows:

Respondent failed to re-hire me June 10th 2011 because of my race, black. Respondent failed to retire me at their new location, no reason given. My job performance as a machine operator met Respondent's expectations. I was hired July 5th 1997. I am qualified for the machine operator postion at their new location. Similarly situated non-black employees with less seniority than myself and whose job performance was comparable to mine were rehired.

14.    **[*AGE DISCRIMINATION ONLY*]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15.    The plaintiff demands that the case be tried by a jury. ☒ YES ☐ NO

16.    THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☐    Direct the defendant to hire the plaintiff.

(b) ☐    Direct the defendant to re-employ the plaintiff.

(c) ☐    Direct the defendant to promote the plaintiff.

(d) ☐    Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☐    Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☐    Direct the defendant to (specify): _____

_____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(g) ☒  If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒  Grant such other relief as the Court may find appropriate.

(Plaintiff's signature)

_Ellis Lee_

(Plaintiff's name)

Ellis P. Lee

(Plaintiff's street address)

277 Boston Street

(City) Chicago Heights  (State) IL  (ZIP) 60411

(Plaintiff's telephone number) (708) – 269-3333

Date: 2/20/20

6

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Ellis Lee<br>277 Boston Street<br>Chicago Heights, IL 60411 | From: | Chicago District Office<br>230 S. Dearborn<br>Suite 1866<br>Chicago, IL 60604 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |
|---|---|---|---|
| EEOC Charge No. | EEOC Representative | | Telephone No. |
| 21B-2012-01924 | Daniel Lim,<br>State & Local Coordinator | | (312) 872-9669 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Julianne Bowman*/jwa

12/2/2019

Enclosures(s)

**Julianne Bowman,**
**District Director**

*(Date Mailed)*

cc:

**NIAGARA LASALLE CORPORATION**
c/o Michael Klupchak, Esq.
Laner, Muchin, Dombrow, Becker, Levin &
Tominberg, Ltd.
515 N. State Street, Suite 2800
Chicago, IL 60654

Charge Number: 201. 651
Complainant: Ellis Lee
Page 2 of 2

    3. Similarly situated non-black employees with less seniority than me and whose job performance was comparable to mine were not laid off such as Roy Miller, Ed Stein, Justin Paulmeyer, Pat Carchetti and Wayne Waldlesky.

II.   A.   ISSUE/BASIS
        FAILURE TO REHIRE – JUNE 10, 2011, BECAUSE OF MY RACE, BLACK

    B.   PRIMA FACIE ALLEGATIONS
        1. My race is black.

        2. Respondent had positions for machine operators at their new location.

        3. I am qualified for the machine operator positions at their new location.

        4. On June 10, 2011, Respondent failed to rehire me at their new location. No reason was given.

        5. Similarly situated non-black employees with less seniority than myself and whose job performance was comparable mine were rehired.

MFP/amm

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form.

#12M0615.02

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| ☒ IDHR | 2012CF3651 |
| ☐ EEOC | |

### Illinois Department of Human Rights and EEOC

| NAME OF COMPLAINANT (indicate Mr. Ms. Mrs.) | TELEPHONE NUMBER (include area code) |
|---|---|
| Mr. Ellis Lee | (708) 481-7520 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 277 Boston Street | Chicago Heights, Illinois 60411 | / / M D YEAR |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME OF RESPONDENT | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE NUMBER (include area code) |
|---|---|---|
| Niagara LaSalle Corporation | 15+ | |

| STREET ADDRESS | CITY. STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 208 South LaSalle, Suite 814 | Chicago, Illinois 60604 | Cook |

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION EARLIEST (ADEA/EPA) LATEST (ALL) |
|---|---|
| Race | 6/10/11 ☐ CONTINUING ACTION |

THE PARTICULARS OF THE CHARGE ARE AS FOLLOWS:

I. A. **ISSUE/BASIS**
LAYOFF – MAY 6, 2011, BECAUSE OF MY RACE, BLACK

B. **PRIMA FACIE ALLEGATIONS**
1. My race is black.

2. My job performance as a machine operator met Respondent's expectations. I was hired on July 5, 1997.

3. On May 6, 2011, I was laid off by Mario Canchetti (non-black), Supervisor. No reason was given.

*Dept. of Human Rights*
*SWITCHBOARD*
*JUL 10 2012*
*RECEIVED*
*By: BKH*

Page 1 of 2

I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

SUBSCRIBED AND SWORN TO BEFORE ME

THIS 6 DAY OF July , 2012.

R. Mata
NOTARY SIGNATURE

OFFICIAL SEAL
R MATA
Notary Public - State of Illinois
My Commission Expires Mar 27, 2015

NOTARY STAMP

X Ellis Lee    7/6/2012
SIGNATURE OF COMPLAINANT    DATE

I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

EEO-5 FORM (Rev. 2/09-INT)

# FILING SUIT IN COURT OF COMPETENT JURISDICTION

### PRIVATE SUIT RIGHTS

The issuance of this *Notice of Right to Sue* or *Dismissal and Notice of Rights* ends the EEOC process with respect to your Charge. You may file a lawsuit against the Respondent within 90 days from the date you receive this Notice. Therefore, you should keep a record of the date. Once the 90 day period is over, your right to sue is lost. If you intend to consult an attorney, you should do so as soon as possible. Furthermore, in order to avoid any question that you did not act in a timely manner, if you intend to sue on your own behalf, your suit should be filed well in advance of the expiration of the 90 day period.

You may file your lawsuit in a court of competent jurisdiction. Filing this Notice is not sufficient. A court complaint must contain a short Statement of the facts of your case which shows that you are entitled to relief. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the Respondent has its main office.

You may contact the EEOC if you have any questions about your rights, including advice on which court can hear your case, or if you need to inspect and copy information contained in the case file.

**IF THE FIRST THREE CHARACTERS OF YOUR** EEOC CHARGE NUMBER **ARE "21B"** AND **YOUR CHARGE WAS INVESTIGATED BY THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS (IDHR), REQUEST FOR REVIEWING AND COPYING DOCUMENTS FROM YOUR FILE** MUST **BE DIRECTED TO IDHR.**

A lawsuit against a private employer is generally filed in the U.S. District Court.

A lawsuit under Title VII of the Civil Rights Act of 1964, as amended, against a State agency or a political subdivision of the State is also generally filed in the U.S. District Court.

However, a lawsuit under the Age Discrimination in Employment or the American with Disabilities Act or, probably, the Equal Pay Act against a State instrumentality (an agency directly funded and controlled by the State) can only be filed in a State court.

A lawsuit under the Age Discrimination in Employment Act or the American with Disabilities Act or the Equal Pay Act against a political subdivision of a State, such as municipalities and counties, may be filed in the U.S. District Court.

For a list of the U.S. District Courts, please see the reverse side.

### ATTORNEY REPRESENTATION

If you cannot afford an attorney, or have been unable to obtain an attorney to represent you, the court having jurisdiction in your case may assist you in obtaining a lawyer. If you plan to ask the court to help you obtain a lawyer, you must make this request of the court in the form and manner it requires. Your request to the court should be made well in advance of the 90 day period mentioned above. A request for representation does not relieve you of the obligation to file a lawsuit within the 90-day period.

### DESTRUCTION OF FILE

If you file suit, you or your attorney should forward a copy of your court complaint to this office. Your file will then be preserved. Unless you have notified us that you have filed suit, your Charge file could be destroyed as early as six months after the date of the Notice of Right to Sue.

IF YOU FILE SUIT, YOU OR YOUR ATTORNEY SHOULD NOTIFY THIS OFFICE WHEN THE LAWSUIT IS RESOLVED.



1412 - 150th Street
Hammond, Indiana 46327
1-877-BUY-BARS
www.niag.com

### Niagara LaSalle Corporation announces the acquisition of Diameters Corporation

February 10, 2011

Niagara LaSalle Corporation, Hammond, IN, is pleased to announce the purchase of Diameters Corporation, Franklin Park, IL and Diameters South, South Chicago Heights, IL

Diameters Corporation is a cold finished producer specializing in turned and polished and precision ground steel bars and tubes.

Niagara LaSalle Corporation is the largest independent producer of cold finished steel bar products in North America, offering the widest range of products in the industry, including world recognized proprietary products; STRESSPROOF®, Fatigue Proof®, etd150® and Custom Cut®.

We are excited to unite the professional talents and quality reputations of Diameters Corporation and their long standing recognition in the industry as quality producers of cold finished steel bar products, with that of Niagara LaSalle Corporation. The combination will create new opportunities for employees, customers and the stakeholders of all three organizations.

Our team is experienced, dedicated and committed to the business of supplying cold finished steel bars that exceed your expectations. We look forward to offering an even wider range of products and services to our customers with the highest level of quality.

Your representative from the organization will be contacting you shortly to review in more detail our plans moving forward.

Thank you in advance for your continued support.

Sincerely,

*Frank Archer*

Frank Archer
President
Niagara LaSalle Corp

*Michael J Maloney*

Michael J. Maloney
President
Diameters Corporation

AMERICA S LARGEST INDEPENDENT COLD FINISHED STEEL BAR PRODUCER

January 5th, 2020

To Whom It May Concern,

On May 6, 2011, I was called into Mario Cianchetti's office, the supervisor at Diameter. He told me that I was being laid off and all of the other employees would be laid off too except employees that had their machines shipped over to the Lasalle location. Mario said that only those employees would be transferred to the Lasalle location. On that day, Mario also laid-off my co-workers, Felton Anderson (Black male, who was going to retire) and John Arva (White male, who was going to retire). There were also three other white employees who were not working at the time due to medical reasons (they were on medical leave). Those employees were Dave Bliven (white male), Pat Cianchetti (White male – Mario Cianchetti's brother), and Bronco Amuse (white male). In addition, there was one employee by the name of Alejandro Garduno (white and Hispanic male) who was on vacation at the time of the lay-off.

It was about a week later that my wife and I were driving by the factory and saw Chris Walker (black male) standing in the door of the plant. I pulled into the lot and asked Chris, where is everyone because there were only two cars in the parking lot. The only cars there were Chris Walker's and Cindy's (white female, secretary). Chris' exact words were "Mario took all of the white employees over to the Lasalle location, they are all working over there now". I asked Chris if he would be going over to the Lasalle location too. Chris stated that he did not know, but when Mario got back, he would ask him to get him in too although Mario had previously stated to me that he would not be able to get anyone over to the Lasalle location because it was a Union shop. That is when I became suspicious about what Mario Cianchetti was doing.

Before I was laid-off, I watched workers at Diameter disassemble the machine that Chris Walker had operated. Mario said that Chris's machine was being shipped over to Lasalle. I thought it was strange that a Black worker whose machine had been shipped over first, was not working at the Lasalle location. However, all of the non-black workers were over at the Lasalle location regardless of whether or not they had operated machines.

It was after I had filed my complaint, that the EEOC had allowed me to view the applications of the workers that were transferred to the Lasalle location. I saw that the majority of the non-black workers were hired at Lasalle and most of their applications were completed and turned in on the same day. I also saw that none of the employees were following any machine that they had operated at Diameter. I then looked at Chris Walkers application. His application showed that he was later transferred to the Lasalle location after I had filed my complaint with the EEOC. However, it appeared that the date of his application had been altered (written over) and maybe, made to look as though he had submitted it prior to my complaint with the EEOC. Most of the non-black worker's applications had appeared to be in the same handwriting (by one person).

The information given to me at the time of my lay-off by Mario Cianchetti was fabricated and misleading. I believe that Mario Cianchetti intentionally lied about the process in which employees would be transferred to the Lasalle location. I believe he excluded me because I am black. It does not surprise me that Mario discriminated against me due to his past history of making racists and derogatory statements about me and other black workers. It is because of Mario Cianchetti's racist bias and discrimination that black workers like me, were not afforded the same opportunity of employment as the non-black workers. Also, at the time of my meeting with the EEOC, I was accompanied by a co-worker, Felton Anderson. Felton Anderson did ask Mrs. Styles (Intake personal at the EEOC) about filing a discrimination complaint. He was advised that the time had expired.

During the time that I worked at Diameter, I always did the best job that I could possibly do when running my machine. The owner, Mike Maloney came over to my machine a few times during his visits to the Chicago Heights plant. Mr. Maloney told me that he was happy with the quality of my bars and how my bars were always finished on time. Mr. Maloney said that he wished he had two or three workers like me, at the company. He told me to just keep up the good work. I also had the best record of absenteeism in the plant. Those are the things that I should be judged by and not my race or color of my skin.

Kind Regards,

*Ellis Lee*

Ellis P. Lee

# Ellis P. Lee

277 Boston Street, Chicago Heights, Illinois 60411
(708) 481-7520  ellis.lee55@gmail.com

## OBJECTIVE

I am an experienced welder and machine operator seeking a full time factory position.

## FACTORY SKILLS

- Operating Machines
- Driving a Fork Lift
- Straightening Bars
- Crane Operator

- Welding
- Grinding
- Polishing
- Janitorial

## EDUCATION

**Bloom High School, Chicago Heights, Illinois**                    **1970-1974**

High School Diploma

## WORK EXPERIENCE

**Thrall Car Manufacture**                    **1974-1990**

Welder, Painter, Sand Blaster, Grinder

- Weld together box car
- Painted box cars
- Sandblasted box car
- Stenciled words on box car
- Grinded sheet metal

**ATLAS Pump Corp.**                    **1993-1994**

Welder, Fork Lift Driver, Sand Blaster, Painter

- Welded water pump heads
- Welded pump propellers
- Operated a handheld voltage machine
- Operated Fork Lift for shipping and receiving
- Sand Blast pump arts

**Interstate Railroad Co.**                    **1995-1996**

Box car Repairman, Welder, Air Brakeman

- Transported box car assembly parts
- Welded and repaired damaged box car parts
- Grinded Sheet metal
- Replaced break shoes
- Adjusted air pressure in the break lines

**Dyna Bar Corp/Diameters South Corp.**                    **1997-~~2001~~ 2011**

Machine Operator, Janitor

- Straightened steel bars
- Polished steel bars
- Operated fork lift for shipment and receiving
- Kept the shop clean
- Operated a small crane



**DIAMETERS**
**CHICAGO HEIGHTS EMPLOYEES**
**AS OF THE DATE OF THE FACILITY SHUTDOWN**

| Diameters South Holland Employees | Race | Job at Diameters South | Job at Niagara South Holland |
|---|---|---|---|
| Anderson, Felton | B | Material Handler | N/A |
| Arvaj, John | W | Crane Operator | N/A |
| Bielenin, David | W | Foreman | N/A |
| Browner, Joshua | W | Material Handler | Material Handler |
| Cianchetti, Patrick | W | Night Foreman | Night Foreman |
| Collins, Cindy | W | Office Clerk | N/A |
| Faldzinski, Wayne | W | Crane Operator | Crane Operator |
| Garduno, Alejandro | H | 75 Turner Operator | 75/120 Turner Operator |
| Lee, Ellis | B | 1/3SS Polisher Operator | N/A |
| Miller, Roy | W | Maintenance | Maintenance Foreman |
| Ormuz, Bronco | W | 120 Turner Operator | N/A |
| Pomeroy, Justin | W | Material Handler/Crane Operator | Crane Operator |
| Stein, Ed | W | 75/120 Turner Operator | 120 Turner Operator |
| Walker, Chris | B | 120 Polisher Operator | 120 Polisher Operator |

**REQUEST # 1-2**

In 2005, I filed a lawsuit against Diameters due to racial discrimination from both Mario Cianchetti and Dave Bielenin. Mario made a settlement with me under the conditions that the discrimination would stop and that Dave Bielenin would attend classes to help him work on how to interact with other races and people civilly. After I returned to work my fellow workers **Bronco Ormuz, Steve Miller, Roy Miller, Dave Bielenin** and even **Pat Cianchetti** (Mario's Brother), approached me on several different occasions informing me that Mario stated that he was going to get me back for the lawsuit although the lawsuit was meant to stay confidential between Mario, Dave and I.

It is now evident that through these actions which were previously taken during the closing of Diameters Chicago Heights location were pre-meditated, intentional, and done to harm me mentally and financially. Mario has retaliated against me by (In his words) "getting me back", excluding me from working at the South Holland Diameters facility.

I hope that you will review this and once and for all hold Mario Cianchetti accountable for the actions that he has been getting away with for years.

I thank you for your time and consideration.

Sincerely,

*Ellis Lee*

Ellis P. Lee

*E.P.L*

1.) It was time for us to go home at 3:00. Mario had call me into the office, and told me that I was being laid off. He said no one was going over to the South Holland pant because it was a union shop. That's what Mario had said when he call me into the office.

2.) The company had Chris Walker machine go first over to the new plant.

3.) There was no meeting of any kind that the company was closing until the day we got laid off. There was no two weeks' notice or four week notice to any of the employee.

4.) I went by walker house we while we were laid off, and he said that Mario took all the white boys jobs over to the new plant. I ask him myself and he said no one was going over there because it was a union shop.

5.) Mario was always making racial comments always to the black people, and especially to walker which is black. I Felton Anderson think Mario was very racial to be a plant manager. He uses Chris Walker as his trophy. Chris Walker was there little stool pigeons.

Felton Anderson

*Felton Anderson* (signature)

708-715-2845

708-891-0520

November 7, 2013

**To whom it may concern,**

I am writing this because I was employed at Diameters South at the time Ellis Lee was harassed by the managers, Mario Cianchetti and Dave Bielenin. The harassment that I've personally witnessed was

- In 2005, I heard workers including Mario's brother Pat Cianchetti, saying that Lee had filed a case against Mario and the plant. They stated that Mario was going to fire Lee as soon as he had an opportunity.
- I also witnessed David Bielenin bringing a gun to the job. He went to the back of the plant and started shooting his gun. When Mario was told about David's action, he did nothing to reprimand him. It was in our Companies rule book that no one can bring a fire arm on the plants property. If I would have done this, I would have gotten fired.
- I witnessed David coming to work drunk several times and getting in the faces of the black employees, yelling cursing and threatening to fire them. Most of this time during these occasions, this happened to Lee. Dave would not do any work and go to the back of the shop near the maintenance room where he would sleep. During these situations, another black worker by the name of Christopher Walker would do Dave's work for him. If Mario needed Dave to do something, he would go to the back and wake him up. If I would have done this, I would have been sent home and fired.
- I remember the time when Mario made Lee have the responsibility of cleaning the bathrooms. Dave would use the bath room, leaving bowel and feces in the toilette and then go tell Lee to clean the bathrooms. Mario was told about this harassment, but he did nothing to stop this harassment.

While working at Diameters South, I've witnessed many incidences where black workers were treated differently than white workers by Mario and Dave. This is like the incident which occurred when we were laid off in 2011. During this time, Mario stated that no one would be hired other than workers who had machines shipped over to the new plant. However, later I found that all of the white workers had jobs at the new plant. This is when I attempted to file a case with EEOC. Unfortunately, due to time limitations, Ms. Style informed me that my time to file the case had run out. I do not think that because Dave and Mario were childhood friends that it was fair for Mario not to stop Dave from harassing Lee. Dave and Mario were the most racist supervisors that I have ever seen and I hope that something is finally done about the way that they treat black workers. Mario said that he would get rid of Lee, and he did.

Thank you,


**Felton Anderson**

November 10, 2013

To whom it may concern,

My name is Priscilla Lee; I am Ellis Lee's wife. I would like to inform you of an incident that I had with Mario Cianchetti a few years ago. One morning at about 7:00 AM, after my husband Ellis Lee had left for work, I had an electrical fire in my kitchen which needed the fire department to extinguish it. After they had extinguished the fire, I called Diameters Chicago Heights location, to inform my husband of the fire that we had at home. When I had called to speak with my husband, Mario Cianchetti answered. I had informed him of what happened with the fire at my home and to speak with my husband. Before I could get it out of my mouth good, Mario replied, I'm on a business call, and then hung the phone up in my face. I then redialed and asked to speak with my husband. Mario Cianchetti then replied, you're not hurt and then hung the phone up again. About 12:30 PM that day, my husband called as he would often do on his break because the workers were not allowed to have cell phones and he was still unaware that there had been a fire at our home. Mario never told him that there was a fire in our home. Ellis was outraged and very upset. He could not believe that there was a fire at our home and that no one had informed him of it.

A couple of years ago, Sandy Arvaj called Diameters and asked to speak to her husband John because her emergency was that she had found one of her dogs dead. They immediately found John and brought him to the phone and allowed him to leave and go home to be with his wife. This is to show you the difference that Mario made between Blacks and Whites. Although both of us had an emergency, he was considerate to Sandy Arvaj (Caucasian) he hung the phone up in my face (African American). Those two phone calls has been the only time that I have spoken to Mario Cianchetti and I thank God that they were because in my opinion he is a racist and poor example of a human being. I hope that Mario is finally held accountable for his actions.

Sincerely,

Priscilla Lee

Priscilla Lee

**Stiles, Nancy**

| | |
|---|---|
| **From:** | Smith, Leonette |
| **Sent:** | Monday, March 04, 2013 2:16 PM |
| **To:** | Stiles, Nancy |
| **Subject:** | RE: good cause |

Good cause.

**From:** Stiles, Nancy
**Sent:** Monday, March 04, 2013 1:40 PM
**To:** Smith, Leonette
**Subject:** FW: good cause

Charge was sent to rp on July 13, 2012, 5 days would be July 18, 2012, the vr was due September 17, 2012, the vr was received December 20, 2012.

**From:** Stiles, Nancy
**Sent:** Monday, March 04, 2013 1:38 PM
**To:** Smith, Leonette
**Subject:** good cause

2012CF3651, received a letter from rp attorney that the verified response was late because the verified response was identical to the verified response in a previous charge filed on May 29, 2012. Rp attorney indicated that he the verified response has been modified to reflect the new charge.

The earlier charge 2012CF1318, was not identical. The earlier charge was against the wrong rp and the charge was changed to show the correct rp and was resubmitted to rp. rp did not think he needed to reply again to this charge since he already replied to the first charge.

Nancy Stiles
Human Rights Investigator
312-814-6277

**CONFIDENTIALITY NOTICE:** This e-mail (and any attachments) contains information that belongs to the sender and may be confidential or protected by attorney-client or attorney work product privilege. The information is only for the individual or entity named above. If you are not the named or intended recipient, please do not disclose, copy, distribute, or use this information. If have received this transmission in error, please promptly notify the sender of receipt of this e-mail and then destroy all copies of it. Receipt by unintended recipient does not waive attorney-client privilege or attorney work product privilege or any other exemption from disclosure.

## RESPONSE TO INFORMATION REQUEST DATED MARCH 6, 2013/ CHARGE #2012CF3651

1. Please provide the job title, job description, certifications, applications and resumes for the individuals who were laid off from Diameter and hired by Respondent.

**RESPONSE:**

The Department was previously provided with a list that contained the names and job titles for the individuals who were working at the Diameters' Chicago Heights facility at the time it was shut down. As mentioned in the enclosed letter, another copy of this list has been attached for your convenience. Respondent is unaware whether Diameters had any "job descriptions" for any of these employees, but in any case, does not have those documents. Respondent does not have written job descriptions for the positions that were transferred to its South Holland facility. The only other documents that exist which are responsive to this question are the applications that were filed by employees on this list. The applications for the eight former Diameters' employees on this list who were hired are enclosed. None of the other former Diameters' employees named on the attached list filed an application, including Complainant.

2. Please provide a list of employees who were laid off, including their job title and job description and certifications.

**RESPONSE:**

This question was answered in No. 1 above.

3. Please provide Respondent's lay off policy, hiring policy, and EEO policy.

**RESPONSE:**

Attached are sections of Respondent's employment manual, which address its EEO policy, and employment termination, including layoff. It does not have written policies pertaining to hiring. Also, it is important to note that Respondent did not lay off the employees at the Diameters' Chicago Heights plant due to a lack of work, as it would at South Holland if

work volume was to decrease. Rather, all employees were terminated when the Chicago Heights plant was closed.

4.      Please provide documentation indicating the date Respondent bought Diameter, the date of the layoff, the date the Diameter Chicago Heights location was closed, the date the laid off employees were told to apply for other positions at the Niagara location.

**RESPONSE:**

I previously provided to Ms. Ayala a section of the "Securities Purchase Agreement" that was responsive to the question about the date of the purchase. As a courtesy, I am reattaching this document, along with the cover letter that accompanied it. There are no documents that specifically address the date of the layoff/shutdown at the Chicago Heights facility, nor when employees were told when to apply for other positions. As explained at the Fact-Finding conference -- and articulated in my position statement to Ms. Ayala, dated May 29, 2012 -- the facility was closed on or about May 6, 2011. Approximately two weeks before that date, Diameters' General Manager Mario Cianchetti had a meeting with all employees at the Chicago Heights facility to advise them of what was happening. He verbally informed the employees that any of them who were interested in working at purchaser's South Holland facility should file an application for employment directly with Niagara.

5.      Please provide the resumes and applications of those who applied for positions at Respondent's location from the Diameter location.

**RESPONSE:**

The answer to this request is the same as for No. 1 -- *i.e.*, the eight employment applications that were filed by former Diameters' Chicago Heights employees.

6.      Please provide Respondent's posting of the positions available at the Respondent's location.

2

**RESPONSE:**

Respondent did not post these positions for employees at the South Holland facility.

Rather, these were considered new hires.

7. Please provide the last known address and phone number for Justin Paulmeyer [sic], Ed Stein, David Bielenin, Bronco Ormuz and Cindy Collins.

**RESPONSE:**

Attached is the contact information you requested.

8. Please provide documentation for each machine indicating Respondent's machines used at the Diameter location and their function and the machines that were used at Respondent's location and their function.

**RESPONSE:**

Respondent does not have any "documentation" containing requested in this item. As explained in both the position statement and at the Fact-Finding conference, the equipment that was transferred from the Diameters' Chicago Heights plant to Niagara's South Holland plant was used in the same capacity both before and after the transfer.

9. Please provide an appearance form.

**RESPONSE:**

This was previously provided to you, via my email to you dated March 8, 2013.

3

Federal Registers / Powered Industrial Truck Operator Training

- **Publication Date:**    03/14/1995
- **Publication Type:**    Proposed Rule
- **Fed Register #:**    60:13782-13831
- **Standard Number:**    1910 ; 1915 ; 1917 ; 1918
- **Title:**    Powered Industrial Truck Operator Training

## DEPARTMENT OF LABOR

## Occupational Safety and Health Administration

## 29 CFR Parts 1910, 1915, 1917, and 1918

## [Docket No. S-008]

## Powered Industrial Truck Operator Training

**AGENCY:** Occupational Safety and Health Administration, Labor.

**ACTION:** Proposed rule.

**SUMMARY:** The Occupational Safety and Health Administration (OSHA) is proposing to revise the general industry safety standard for training powered industrial truck operators and to add equivalent training requirements for the maritime industries. The existing standard in part 1910 requires that only trained operators who are authorized to do so can operate powered industrial trucks and that methods of training be devised. The proposed training requirements would mandate the development of a training program that would base the amount, type, degree, and sufficiency of training on the knowledge of the trainee and the ability of the vehicle operator to acquire, retain, and use the knowledge and the skills and abilities that are necessary to safely operate the truck. A periodic evaluation of each operator's performance would be required. Refresher or remedial training also would be required, based primarily on unsafe operation, an accident or near miss, or deficiencies found in a periodic evaluation of the operator.

**DATES:** Written comments and requests for a hearing on this proposed rule must be postmarked by July 12, 1995.

**ADDRESSES:** Comments, information, and hearing requests should be sent in quadruplicate to: Docket Office, Docket No. S-008; Room N2624; U.S. Department of Labor, Occupational Safety and Health Administration; 200 Constitution Avenue NW; Washington, DC 20210 (202-219-7894).

**FOR FURTHER INFORMATION CONTACT:** Mr. Richard P. Liblong, Office of Information and Consumer Affairs, U.S. Department of Labor, Occupational Safety and Health Administration, Room N3641; 200 Constitution Avenue NW; Washington, DC 20210 (202-219-8148).

## SUPPLEMENTARY INFORMATION:

## I. Background

a. The General Industry Standard

On May 29, 1971 (36 FR 10466), OSHA adopted some of the existing Federal standards and national consensus standards as OSHA standards under the procedures described in section 6(a) of the Occupational Safety and Health Act (OSH Act) (29 U.S.C. 655, et.al.). Section 6(a) permitted OSHA to adopt, without rulemaking, within 2 years of the effective date of the Act, any established Federal standard or national consensus standard.

One of the consensus standards that was adopted under the 6(a) procedure was the American National Standards Institute (ANSI) B56.1-1969 Safety Standard for Powered Industrial Trucks. Among the provisions adopted from that standard was the operator training requirement codified at 29 CFR 1910.178(l), which states:

Only trained and authorized operators shall be permitted to operate a powered industrial truck. Methods of training shall be devised to train operators in the safe operation of powered industrial trucks.

In that consensus standard, a powered industrial truck is defined as a mobile, power-driven vehicle used to carry, push, pull, lift, stack, or tier material. One truck may be known by several different names. Included are vehicles that are commonly referred to as high lift trucks, counterbalanced trucks, cantilever trucks, rider trucks, forklift trucks; high lift trucks, high lift platform trucks; low lift trucks, low lift platform trucks; motorized hand trucks, pallet trucks; narrow aisle rider trucks, straddle trucks; reach rider trucks; single side loader rider trucks; high lift order picker rider trucks; motorized hand/rider trucks; or counterbalanced front/side loader lift trucks. Excluded from the scope of the OSHA standard are vehicles used for earth moving or over-the-road haulage.

b. The Maritime Safety Standards

In 1958, Congress amended the Longshoremen's and Harbor Workers' Compensation Act (LHWCA) (44 Stat. 1424; 33 U.S.C. 901 et seq.) to provide maritime employees with a safe work environment. The amendments (Pub. L. 85-742, 72 Stat. 835) required employers covered by the LHWCA to "furnish, maintain and use" equipment and to establish safe working conditions in accordance with regulations promulgated by the Secretary of Labor. Two years later, the Labor Standards Bureau (LSB) issued the first set of safety and health regulations for longshoring activities as 29 CFR part 9 (25 FR 1565, February 20, 1960). These regulations only covered longshoring activities taking place aboard vessels.

Passage of the OSH Act (84 Stat. 1590; 29 U.S.C. 650 et seq.) authorized the Secretary of Labor to adopt established Federal standards issued under other statutes, including the LHWCA, as occupational safety and health standards under the OSH Act. Accordingly, the Secretary adopted the existing shipyard employment and longshoring regulations and recodified these rules as 29 CFR parts 1915 and 1918 (39 FR 22074, June 19, 1974). Since the OSH Act comprehensively covered all private employment, the longshoring standards also applied to shoreside cargo-handling operations. (See 29 CFR 1910.16.) The requirements for the use of mechanically powered vehicles used aboard vessels were codified at Sec. 1918.73. These provisions did not include a requirement for the training of vehicle operators.

In addition, in accordance with established policy codified at 29 CFR 1910.5(c)(2), OSHA has applied its general industry regulations to shoreside activities not covered by its older longshoring rules. Citations also have been issued under section 5(a)(1) (the General Duty Clause) of the OSH Act (84 Stat. 1593; 29 U.S.C. 654), since some serious hazards are not addressed by the requirements of part 1910, 1915, or 1918.

On July 5, 1983 (48 FR 30886), OSHA published its final standard for Marine Terminals. These rules were intended to address the shoreside segment of marine cargo handling. Section 1917.27 Personnel required that:

(a) Qualifications of machinery operators.

(1) Only those employees determined by the employer to be competent by reason of training or experience, and who understand the signs, notices and operating instructions and are familiar with the signal code in use shall be permitted to operate a crane, winch or other power operated cargo handling apparatus, or any power operated vehicle, or give signals to the operator of any hoisting apparatus.

Exception: Employees being trained and supervised by a designated person may operate such machinery and give signals to operators during training.

(2) No employee known to have defective uncorrected eyesight or hearing, or to be suffering from heart disease, epilepsy, or other ailments which may suddenly incapacitate him shall be permitted to operate a crane, winch or other power-operated cargo handling apparatus or a power-operated vehicle.

The Marine Terminal Standards also had requirements for powered industrial trucks at Sec. 1917.43 Powered industrial trucks. However, these requirements were for the operation, maintenance and outfitting of those vehicles and did not expand upon the training requirements found at Sec. 1917.27.

On June 2, 1994, OSHA published in the **Federal Register** (59 FR 28594) a Notice of Proposed Rulemaking (NPRM) for the revision of the longshoring and marine terminals standards.

That NPRM did not propose to amend significantly the aforementioned training requirements of Sec. 1917.27 or to incorporate a training requirement for longshoring (on-board vessel) operations.

c. Updated Consensus Standard

Since promulgation of the OSHA standards, the consensus standard (ANSI B56.1) has undergone four complete revisions (dated 1975, 1983, 1988 and 1993). The current consensus standard (Ex. 3-1) states:

4.18 Operator qualifications. Only trained and authorized persons shall be permitted to operate a powered industrial truck. Operators of powered industrial trucks shall be qualified as to visual, auditory, physical, and mental ability to operate the equipment safely according to 4.19 and all other applicable parts of Section 4.

4.19 Operator training.

4.19.1 Personnel who have not been trained to operate powered industrial trucks may operate a truck for the purposes of training only, and only under the direct supervision of the trainer. This training should be conducted in an area away from other trucks, obstacles, and pedestrians.

4.19.2 The operator training program should include the user's policies for the site where the trainee will operate the truck, the operating conditions for that location, and the specific truck the trainee will operate. The training program shall be presented to all new operators regardless of previous experience.

4.19.3 The training program shall inform the trainee that:

(a) The primary responsibility of the operator is to use the powered industrial truck safely following the instructions given in the training program.

(b) Unsafe or improper operation of a powered industrial truck can result in: death or serious injury to the operator or others; damage to the powered industrial truck or other property.

4.19.4 The training program shall emphasize safe and proper operation to avoid injury to the operator and others and prevent property damage, and shall cover the following areas:

(a) Fundamentals of the powered industrial truck(s) the trainee will operate, including:

(1) characteristics of the powered industrial truck(s), including variations between trucks in the workplace;

(2) similarities to and differences from automobiles;

(3) significance of nameplate data, including rated capacity, warnings, and instructions affixed to the truck;

(4) operating instructions and warnings in the operating manual for the truck, and instructions for inspection and maintenance to be performed by the operator;

(5) type of motive power and its characteristics;

(6) method of steering;

(7) braking method and characteristics, with and without load;

(8) visibility, with and without load, forward and reverse;

(9) load handling capacity, weight and load center. (10) stability characteristics with and without load, with and without attachments;

(11) controls-location, function, method of operation, identification of symbols;

(12) load handling capabilities; forks, attachments;

(13) fueling and battery charging;

(14) guards and protective devices for the specific type of truck;

(15) other characteristics of the specific industrial truck. (b) Operating environment and its effect on truck operation, including:

(1) floor or ground conditions including temporary conditions;

(2) ramps and inclines, with and without load;

(3) trailers, railcars, and dockboards (including the use of wheel chocks, jacks, and other securing devices;

(4) fueling and battery charging facilities;

(5) the use of "classified" trucks in areas classified as hazardous due to risk of fire or explosion, as defined in ANSI/NFPA 505;

(6) narrow aisles, doorways, overhead wires and piping, and other areas of limited clearance;

(7) areas where the truck may be operated near other powered industrial trucks, other vehicles, or pedestrians;

(8) use and capacity of elevators;

(9) operation near edge of dock or edge of improved surface;

(10) other special operating conditions and hazards which may be encountered.

(c) Operation of the powered industrial truck, including:

(1) proper preshift inspection and approved method for removing from service a truck which is in need of repair;

(2) load handling techniques, lifting, lowering, picking up, placing, tilting;

(3) traveling, with and without loads; turning corners;

(4) parking and shutdown procedures;

(5) other special operating conditions for the specific application.

(d) Operating safety rules and practices, including:

(1) provisions of this Standard in Sections 5.1 to 5.4 address operating safety rules and practices;

(2) provisions of this Standard in Section 5.5 address care of the truck;

(3) other rules, regulations, or practices specified by the employer at the location where the powered industrial truck will be used.

(e) Operational training practice, including;

## STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS
## INVESTIGATION REPORT

**Complainant:** Ellis Lee           **IDHR No.:** 2012CF3651
**Respondent:** Niagara LaSalle Corporation           **EEOC No.:** 21BA21924

**Investigator:** ___NAS___     **Supervisor:** _ZMS_     **Date:** _8/8/13_

**Issue/Basis:**                                        **Finding:**

A. Layoff/race, black                                   A. Lack of substantial evidence
B. Failure to rehire/race, black                        B. Lack of substantial evidence

**Jurisdiction:**

Alleged violation:                                      A: May 6, 2011
                                                        B: June 10, 2011
Charge filed:                                              July 12, 2011
Charge perfected:                                          July 6, 2012
Amendments:                                                None
Number of employees:                                       509

**Verified Response:**

Due:       September 17, 2012
Received:  December 20, 2012
Timely: ___  Untimely: _X_           **Group Exhibit A**
If untimely, good cause shown:  Yes _X_ No ___

**Employment Data:**

Respondent's EEO report **(Exhibit B),** indicates that Respondent employed 509 individuals. Mark Ruder, General Manager, stated that there were 14 (.03%), employees working at Complainant's location of whom three (21%), were race, black.

**Uncontested Facts:**

1.    Respondent is a producer of cold finished steel bar products.

2.    On May 6, 2011, Complainant was laid off by Mario Cianchetti, Supervisor with Diameters.

3.    Complainant's job performance as a machine operator met Respondent's expectations.

Charge No.: 2012CF3651
Page 2 of 10

4.  Respondent laid off, all black and non-black workers at Complainant's location.

5.  Chris Walker (black), 120 Polisher Operator, was the only individual in Complainant's protected category that was rehired by Respondent.

6.  Complainant did not fill out an application for a position at Respondent's new location.

7.  On June 10, 2011, Complainant was not rehired at Respondent.

**Complainant's Allegations-Count A**:

Complainant, a machine operator, alleges that he was laid off on May 6, 2011, due to his race, black. Complainant alleges that he met Respondent's expectations. Complainant alleges that Mario Cianchetti (non-black), Chief Engineer, discharged Complainant and no reason was given. Complainant alleges that similarly situated non-black employees with less seniority than Complainant and whose job performance was comparable to Complainant were not laid off such as Roy Miller, Ed Stein, Justin Pomeroy, Patrick Cianchetti and Wayne Faldzinski.

**Respondent's Defenses-Count A:**

Respondent's articulated legitimate non-discriminatory reason is that Complainant and all the employees were discharged as a result of Respondent purchasing Diameters and determining that Respondent would not be operating that facility.

**Investigation Summary-Count A:**

A.  **Complainant's Evidence.**

1.  Complainant stated that prior to May 6, 2011, he received a letter from Respondent dated February 10, 2011. Complainant stated that the letter indicated that Respondent bought Diameter. Complainant stated that the letter indicated that the combination of the two companies would create new opportunities for employees. Complainant stated that the letter indicated that someone would be talking to them about the details of their plans but no one ever did **(Exhibit C).**

2.  Complainant stated that on May 6, 2011, Mario Cianchetti (non-black), Chief Engineer, called Complainant into his office and told him that he was being laid off from Diameter and that he could not take anyone to Respondent because they were union jobs. Complainant stated that Cianchetti called each employee into his office one by one telling them that they were laid off and everyone looked surprised. Complainant stated that there was no letter that was sent out to the laid off employees.

3.  Complainant stated that one day he went back to Diameter to clean out his locker and Chris Walker (black), 120 Polisher Operator, was sitting outside the building. Complainant stated that Walker told him that he was there to see if he had a job at Respondent. Complainant stated that Walker told him that they all got new jobs.

Charge No.: 2012CF3651
Page 3 of 10

Complainant stated that there was no job posting and no one told him that he could apply at Respondent for another position.

4.     Complainant stated that Respondent only closed down one of Diameter's locations.  Complainant stated that Respondent's location in Franklin Park, Illinois, is still open.

5.     Complainant stated that Dave Bielenin (non-black), Supervisor, was also a machine operator.  Complainant stated that Bronco Ormuz (non-black), Machine Operator, Wayne Faldzinski (non-black), Shipping and Receiving and Hand Crane Operator, Roy Miller (non-black), Maintenance, Ed Stein (non-black), Machine Operator, Justin Pomeroy (non-black), Scale Man, Joshua Browner (non-black), Scale Man,  John Arvaj (non-black), Overhead Crane Operator, Felton Anderson (black), Overhead Crane Operator, Chris Walker (black), Machine Operator and Garduno Alejandro (non-black), Machine Operator, were all let go when Respondent closed their plant.

6.     Complainant stated that he was qualified to work at Respondent's new location. Complainant stated that he had experience as a machine operator, driving a fork lift, straightening bars, and as a crane operator (**Exhibit D**).

7.     Bronco Ormuz (non-black), former Machine Operator, stated that there was some minor dislike between Complainant and Mario Cianchetti. Ormuz stated that he was also laid off.

8.     David Bielenin (non-black), former Forman, stated that he used to work with Complainant. Bielenin stated that he was one of the first people to be laid off. Bielenin stated that he does not think that Complainant was laid off due to his race. Bielenin stated that employees were talking about Complainant not liking to work with white people. Bielenin stated that he had nothing else to say.

9.     Priscilla Lee (black), wife of Complainant, stated that she and Complainant would drive up to where he used to work and they would see Chris Walker (black), 120 Polisher Operator, sitting outside the building. Lee stated that Complainant asked Walker where everyone was and Walker told Complainant that everyone was over at the new location working. Lee stated that Complainant asked Walker if he was going to work at the new location and Walker told Complainant that he did not know. Lee stated that this was two or three weeks after Complainant had been laid off.

10.     Felton Anderson (black), former Crane Operator, Shipping and Receiving, stated that  when Respondent bought Diameters, an official came down and told everyone that they had been bought out and that someone from Respondent would come and tell them what was going to happen, but no one told them anything. Anderson stated that they were going home that evening and Cianchetti called everyone to his office and told them that Respondent had bought Diameters and no one was going over to be transferred to the new location because they were

Charge No.: 2012CF3651
Page 4 of 10

union jobs. Anderson stated that Diameters did not have a union but regardless they would just have joined the union. Anderson stated that when Cianchetti let them go, Cianchetti's brother was in the hospital having hip surgery so Cianchetti held the job for his brother. Anderson stated that Walker was the only black employee that was transferred to the new location. Anderson stated that Cianchetti let the employees go first that he did not want because he did not want for them to see all the other guys moving to the new location until after he was out of the office and could not be confronted.

11. Cindy Collins (non-black), former Secretary, stated that Respondent bought Diameters but all they did was clean out their building. Collins stated that she was also laid off. Collins stated that she did little jobs just to get the material out of their plant. Collins stated that she does not believe that Respondent discriminated against Complainant because non-black employees were also laid off.

B. **Respondent's Evidence.**

**Staff Note:**

On July 23, 2013, staff requested a letter from Respondent, dated February 10, 2011, which was sent to employees indicating the acquisition between Niagara and Diameters. Respondent indicated that they did remember the letter however they could not find their copy.

1. Mario Cianchetti (non-black), Chief Engineer, stated that Complainant worked as a 1/3SS Polisher Operator.[1]

2. Mark Ruder (non-black), General Manager, stated that Respondent purchased Diameters on February 10, 2011 **(Group Exhibit E)**.

3. Ruder stated that Respondent closed the Diameters location in which Complainant worked on May 6, 2011. Ruder stated that approximately two weeks prior to May 6, 2011, Cianchetti had a meeting with all the employees at Diameters informing them that Diameters had been purchased by Respondent and that their location would be shut down. Ruder stated that Cianchetti informed the employees that the employees who operated any transferred equipment might have the opportunity to continue to work in the same job at Respondent's location as would other employees in other jobs that would be moved to Respondent's location. Ruder stated that Cianchetti encouraged any employee who was interested in working at Respondent to file an application for employment directly with Respondent. Ruder stated that Cianchetti also informed the employees that those who ended up without a job as a result of the shutdown would receive severance pay in the amount of two weeks of pay for every year of service. Ruder stated that Complainant received severance pay.

---

[1] Respondent contends that they do not have job descriptions for their employees.

Charge No.: 2012CF3651
Page 5 of 10

4.  Ruder stated that of the 14 employees that were laid off, 11 were non-black. Ruder stated that two of the 11 employees were management, which left eight, non-black, non-management employees who were laid off.

5.  **Exhibit F** is 2 pages of Respondent's equal employment opportunity policy, dated September 1, 1998, which indicates that Respondent provides equal opportunity for all individuals and not discriminatory practices based on race, color, religion, sex, national origin, age, disability, or any other characteristic protected by law. Employees are encouraged to bring concerns or complaints for the attention of their supervisor without fear of retaliation. Anyone found to be discriminating against another employee will be subject to discipline including discharge.

6.  **Exhibit G** is Respondent's employment termination policy, dated September 1, 1998, which indicates that employee's employment may be terminated due to resignation, discharge, layoff, or retirement. Respondent is an at-will employer and both Respondent and Complainant can terminate their relationship at any time.[2]

7.  Ruder stated that Respondent's layoff practice for this situation was that everyone at the plant was laid off. Ruder stated that Respondent's practice would be based on the situation surrounding a layoff. Ruder stated that Diameters did not have a union.

C.  **Complainant's Rebuttal.**

1.  Complainant stated that Respondent told them that someone would meet with them to talk about their layoff process but no one did.

**Analysis:**

The Department's investigation did not reveal that Complainant's race was not a contributing factor in his lay off. The investigation revealed that on February 10, 2011, Respondent bought Diameters Corporation, and Diameters South Corporation. It is uncontested that Diameter's plant was shut down in South Holland, where Complainant worked, and everyone was laid off. Respondent contends that there were 14 individuals working at Complainant's location at the time of the layoff including Complainant and all 14 individuals were laid off. It is uncontested that out of the 14 employees that were laid off by Respondent, Felton Anderson (black), Material Handler, Chris Walker (black), 120 Polisher Operator, and Complainant were the only individuals in Complainant's protected category, that were laid off. Respondent contends that they do not have a separate layoff policy. The investigation revealed that Respondent's employment termination policy indicates that an employee's employment may be terminated due to resignation, discharge, layoff, or retirement. Respondent is an at-will employer and both Respondent and Complainant can terminate their relationship at any time. The investigation revealed that Respondent has an EEO policy which indicates that Respondent provides equal opportunity for all individuals and not discriminatory practices based on race, color, religion,

---

[2] Respondent contends that they do not have any other policies regarding layoff.

Charge No.: 2012CF3651
Page 6 of 10

sex, national origin, age, disability, or any other characteristic protected by law. Employees are encouraged to bring concerns or complaints for the attention of their supervisor without fear of retaliation. Anyone found to be discriminating against another employee will be subject to discipline including discharge.

## Findings and Conclusion-Count A:

A finding of lack of substantial evidence is recommended because

There is no evidence that Respondent's articulated legitimate non-discriminatory reason is pretext for unlawful discrimination.

## Complainant's Allegations-Count B:

Complainant, a machine operator, alleges that Respondent failed to rehire him on June 10, 2011, due to his race, black. Complainant alleges that he met Respondent's expectations. Complainant alleges that Respondent had positions for machine operators at their new location. Complainant alleges that he is qualified for the machine operator position at Respondent's new location. Complainant alleges that no reason was given from Respondent as to why he was not rehired at their new location. Complainant alleges that similarly situated non-black employees with less seniority than him and whose job performance was comparable to his were rehired.

## Respondent's Defenses-Count B:

Respondent's articulated legitimate non-discriminatory reason is that Complainant was not hired is because Complainant never applied for a position at Respondent's new facility. Respondent contends that they hired an individual who is in Complainant's protected category.

## Investigation Summary-Count B:

A.  **Complainant's Evidence.**

1.  See Count A, Complainant's Evidence, number 1 through 11.

2.  Complainant stated that he was not only a machine operator but he also ran the scale, did shipping and receiving, was a fork lift operator, did welding and performed maintenance on machines, painting of machines, janitorial work, and ran hand cranes.

3.  Ormuz stated that Respondent did not offer him a job at the new facility either. Ormuz stated that no one at Respondent who laid him off told him that he could go apply for another position at Respondent's new location. Ormuz stated that he found out that other guys were told that they could go apply for work at the new location. Ormuz stated that Respondent told those individuals, who they liked, to go fill out an application at the new location. Ormuz stated that he did not apply for another position. Ormuz stated that Respondent re-hired people they wanted. Ormuz stated that Respondent did not offer Complainant a job. Ormuz stated that

Charge No.: 2012CF3651
Page 7 of 10

a lot of people were told to go and apply for a position and some people were hired on the spot. Ormuz stated that Complainant was a good employee.

4. Bielenin stated that management told him to go apply for a position at the new location because he was a good worker. Bielenin stated that he did not go apply for a position at the new location because he hurt his hip and he wanted to take care of it.

B. **Respondent's Evidence.**

1. See Count A, Respondent's Evidence, number 1 through 8.

2. Ruder stated that Respondent did not consider seniority when deciding who would fill the openings at Respondent's South Holland location. Ruder stated that the decision regarding who to hire at Respondent's new location was based on which machines and jobs the applicants had worked before Respondent bought Diameters. Ruder stated that for every machine and job that went to Respondent's new location, that employee that was working that machine was offered employment to continue in the same job function. Ruder stated that Respondent has no documentation indicating who worked which machine or which machine was sent to Respondent and their function. Ruder stated that the equipment that was transferred was used in the same capacity both before and after transfer.

3. Ruder stated that of the 14 employees that were laid off from Diameters, eight were offered jobs at Respondent's new location and the six who were not hired were given severance. Ruder stated that Felton Anderson (black), Material Handler, John Arvaj (non-black), Crane Operator, David Bielenin (non-black), Foreman, Cindy Collins (non-black), Office Clerk, Complainant, 1/3SS Polisher Operator, and Bronco Ormuz (non-black), 120 Turner Operator, were not offered work at Respondent's new location. Ruder stated that Respondent did not post the positions available at the new location as these positions were new hires that required an application. Ruder stated that Joshua Browner (non-black), Material Handler, Patrick Cianchetti (non-black), Night Foreman, Wayne Faldzinski (non-black), Crane Operator, Alejandro Garduno (non-black), 75/120 Turner Operator, Roy Miller (non-black), Maintenance Foreman, Justin Pomeroy (non-black), Crane Operator, Ed Stein (non-black), 120 Turner Operator, and Chris Walker (black), 120 Polisher Operator, were all hired.

4. Ruder stated that Complainant and Chris Walker (black), 120 Polisher, Operator, were the only two black polisher operators and Respondent hired Walker who filled out an application to work at Respondent's new location **(Group Exhibit H)**.

5. Ruder stated that Complainant confirmed that he never filled out an application for a position at Respondent's new location. Ruder stated that all employees that were rehired at Respondent's new location applied for those jobs. Ruder stated

Charge No.: 2012CF3651
Page 8 of 10

> that the four non-black individuals who were not rehired by Respondent never filled out an application. Ruder stated that Respondent does not have a hiring policy.

## C. **Complainant's Rebuttal.**

1. Complainant stated that he was never told that he could fill out an application.

## Analysis B:

The Department's investigation did not reveal that Complainant's race was a contributing factor in not being rehired. The investigation revealed that on February 10, 2011, Respondent bought Diameters Corporation, and Diameters South Corporation. It is uncontested that Diameter's plant was shut down in South Holland, where Complainant worked, and all 14 employees were laid off. Respondent contends that they do not have a hiring policy. Respondent contends that all 14 employees were told at the time of their lay off that if they wanted a job at the new location they needed to fill out an application. Respondent contends that Joshua Browner (non-black), Material Handler, Patrick Cianchetti (non-black), Night Foreman, Wayne Faldzinski (non-black), Crane Operator, Alejandro Garduno (non-black), 75/120 Turner Operator, Roy Miller (non-black), Maintenance Foreman, Justin Pomeroy (non-black), Crane Operator, Ed Stein (non-black), 120 Turner Operator, and Chris Walker (black), 120 Polisher Operator, were all hired at Respondent's new location because they applied at the new location to work the same jobs they worked on at their previous jobs. Complainant alleges that he was not informed that he could fill out an application. It is uncontested that Complainant did not fill out an application for a position at Respondent's new location. The investigation revealed that Chris Walker (black), 120 Polisher Operator, is in Complainant's protected category, filled out an application with Respondent. It is uncontested that Walker was rehired by Respondent. Witness testimony indicates that others who are not in Complainant's protected category were not rehired. Witness testimony indicates that another individual who is not in Complainant's protected category was not told by management to fill out an application at Respondent's new location.

## Findings and Conclusion-Count B:

A finding of lack of substantial evidence is recommended because

There is no evidence that Respondent's articulated legitimate non-discriminatory reason is pretext for unlawful discrimination.

## Witness List:

A. Complainant (ffc)
277 Boston St.
Chicago Heights, IL 60411
708-323-7228

Charge No.: 2012CF3651
Page 9 of 10

B.    Mario Cianchetti (non-black) (ffc)
      Chief Engineer
      C/o Michael Klupchak
      Attorney
      Laner, Muchin, Dombrow, Becker, Levin and Tominberg, Ltd.
      515 N. State St.
      Ste. 2800
      Chicago, IL  60654
      312-467-9800

C.    Mark Ruder (non-black) (ffc)
      General Manager
      C/o Michael Klupchak
      Attorney
      Laner, Muchin, Dombrow, Becker, Levin and Tominberg, Ltd.
      515 N. State St.
      Ste. 2800
      Chicago, IL  60654
      312-467-9800

D.    John Arvaj (non-black)                    (staff left phone message with witness
      former Overhead Crain Operator           June 25, 2013.  Staff mailed witness
      44 W. 14th Place                          contact letter June 25, 2013.  To date
      Chicago Heights, IL  60411                witness has not contacted staff)
      708-755-4280

E.    Justin Pomeroy (non-black)               (staff left phone message with witness
      former Scale Man                          June 25, 2013.  Staff mailed witness
      7362 Cypress Ct.                          contact letter June 25, 2013.  To date
      Lowell, IN. 46356                         witness has not contacted staff)
      219-713-8100

F.    Ed Stein (non-black)                     (staff left phone message with witness
      former Machine Operator                   June 25, 2013.  Staff mailed witness
      2034 E. Oak St.                           contact letter June 25, 2013.  To date
      Crete, IL  60417                          witness has not contacted staff)
      708-825-8326

G.    David Bielenin (non-black)               (staff spoke with witness June 28, 2013, and
      former Forman                             August 6, 2013)
      2042 217th, St.
      Sauk Village, IL  60411
      708-846-8407

Charge No.: 2012CF3651
Page 10 of 10

H.    Bronco Ormuz (non-black)          (staff spoke to witness June 28, 2013, and
        former Machine Operator        August 6, 2013)
        13 East Rocket Circle
        Park Forest, IL 60466
        708-747-5928

I       Cindy Collins (non-black)         (spoke with witness June 25, 2013)
        former Secretary
        21330 Tower Ave.
        Matteson, IL 60443
        708-856-0238

J.      Felton Anderson             (spoke with witness March 4, 2013)
        former Machine Operator
        1064 George St.
        Calumet City, IL 60409
        708-715-3992

### Exhibits:

A.    Good cause determination worksheet.

B.    Respondent's EEO report.

C.    Complainant's letter from Respondent dated February 10, 2011.

D.    Complainant's resume.

E.    Respondent's securities purchase agreement.

F.    Respondent's equal employment opportunity policy, dated September 1, 1998.

G.    Respondent's employment termination policy, dated September 1, 1998.

H.    Respondent's application for Chris Walker.

IRSHELL
Rev 11/09

# Ellis P. Lee

277 Boston Street, Chicago Heights, Illinois 60411
(708) 481-7520  ellis.lee55@gmail.com

## OBJECTIVE

I am an experienced welder and machine operator seeking a full time factory position.

## FACTORY SKILLS

- Operating Machines
- Driving a Fork Lift
- Straightening Bars
- Crane Operator

- Welding
- Grinding
- Polishing
- Janitorial

## EDUCATION

**Bloom High School, Chicago Heights, Illinois**                    **1970-1974**

High School Diploma

## WORK EXPERIENCE

**Thrall Car Manufacture**                                         **1974-1990**

Welder, Painter, Sand Blaster, Grinder
- Weld together box car
- Painted box cars
- Sandblasted box car
- Stenciled words on box car
- Grinded sheet metal

**ATLAS Pump Corp.**                                              **1993-1994**

Welder, Fork Lift Driver, Sand Blaster, Painter
- Welded water pump heads
- Welded pump propellers
- Operated a handheld voltage machine
- Operated Fork Lift for shipping and receiving
- Sand Blast pump arts

**Interstate Railroad Co.**                                       **1995-1996**

Box car Repairman, Welder, Air Brakeman
- Transported box car assembly parts
- Welded and repaired damaged box car parts
- Grinded Sheet metal
- Replaced break shoes
- Adjusted air pressure in the break lines

**Dyna Bar Corp/Diameters South Corp.**                           **1997-2001** *2011*

Machine Operator, Janitor
- Straightened steel bars
- Polished steel bars
- Operated fork lift for shipment and receiving
- Kept the shop clean
- Operated a small crane



**DIAMETERS**
**CHICAGO HEIGHTS EMPLOYEES**
**AS OF THE DATE OF THE FACILITY SHUTDOWN**

| Diameters South Holland Employees | Race | Job at Diameters South | Job at Niagara South Holland |
|---|---|---|---|
| Anderson, Felton | B | Material Handler | N/A |
| Arvaj, John | W | Crane Operator | N/A |
| Bielenin, David | W | Foreman | N/A |
| Browner, Joshua | W | Material Handler | Material Handler |
| Cianchetti, Patrick | W | Night Foreman | Night Foreman |
| Collins, Cindy | W | Office Clerk | N/A |
| Faldzinski, Wayne | W | Crane Operator | Crane Operator |
| Garduno, Alejandro | H | 75 Turner Operator | 75/120 Turner Operator |
| Lee, Ellis | B | 1/3SS Polisher Operator | N/A |
| Miller, Roy | W | Maintenance | Maintenance Foreman |
| Ormuz, Bronco | W | 120 Turner Operator | N/A |
| Pomeroy, Justin | W | Material Handler/Crane Operator | Crane Operator |
| Stein, Ed | W | 75/120 Turner Operator | 120 Turner Operator |
| Walker, Chris | B | 120 Polisher Operator | 120 Polisher Operator |

REQUEST # 1-2



**NIAGARA LASALLE CORPORATION**

## *EMPLOYMENT APPLICATION*

WE CONSIDER ALL APPLICANTS FOR ALL POSITIONS WITHOUT REGARD TO RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, MARITAL STATUS OR VETERAN STATUS, THE PRESENCE OF A NON-JOB RELATED MEDICAL CONDITION OR HANDICAP OR ANY OTHER LEGALLY PROTECTED STATUS. WE ARE AN EQUAL OPPORTUNITY EMPLOYER.

NAME: Chris T. Walker       DATE: 6/22/2011

ADDRESS: 14108 Wabash Ave    CITY: Riverdale    STATE: IL    ZIP: 60827

PHONE NUMBER: (705)-439-8762 (OTHER)    HOME    SOCIAL SECURITY NUMBER: ▓▓▓▓▓

WHEN ARE YOU AVAILABLE TO START WORK? YES    ARE YOU OVER 18 YRS OF AGE? YES

HAVE YOU EVER FILED AN APPLICATION HERE BEFORE? YES (NO)    IF YES, WHEN? _____

DO YOU HAVE THE LEGAL RIGHT TO WORK AND REMAIN IN THE UNITED STATES? (YES) NO    (IF HIRED, VERIFICATION WILL BE REQUIRED BY LAW)

POSITION(S) APPLIED FOR: _____

ARE YOU WILLING TO WORK ANY SHIFT? (YES) NO    IS OVERTIME A PROBLEM? YES (NO)    MAY WE CONTACT YOUR PRESENT EMPLOYER? (YES) NO

INDICATE SPECIAL QUALIFICATIONS OR SKILLS: TDL, Oper 1/3/5 inch

| EDUCATION | NAME OF SCHOOL | LOCATION OF SCHOOL | COURSE OF STUDY | YEARS COMPLETED | DEGREE RECEIVED | DID YOU GRADUATE? |
|---|---|---|---|---|---|---|
| ELEMENTARY | Draper Voc | Chgo, IL | Eng, Math | | | YES |
| HIGH SCHOOL | Bloom HS | @Chgo Hts | | | | |
| COLLEGE | | | | | | |
| OTHER | Dixon Bible School | Dixemore, IL | Eng, Math | | GED | YES |

HAVE YOU PARTICIPATED IN AN APPRENTICESHIP PROGRAM? YES (NO)    WHERE? _____

WHEN? _____    KIND OF TRADE: _____

HAVE YOU EVER BEEN CONVICTED OF A CRIME? YES (NO)

IF YES, LIST CONVICTIONS (A CONVICTION DOES NOT NECESSARILY DISQUALIFY AN APPLICANT FOR THE POSITION BEING APPLIED FOR)

_____

_____

IS THERE ANYTHING THAT WOULD PREVENT YOU FROM PERFORMING IN A REASONABLE AND SAFE MANNER THE ACTIVITIES INVOLVED IN THE POSITION FOR WHICH YOU HAVE APPLIED?

_____

_____

_____

LIST THE NAME(S) OF ANY RELATIVE(S) IN OUR EMPLOY AND YOUR RELATIONSHIP TO THEM:

_____

_____

## PRIOR EMPLOYMENT – START WITH MOST RECENT EMPLOYER

| EMPLOYER Dimmies Co. | PHONE 708-753-5611 | FROM 2001 | TO 2001 |
|---|---|---|---|
| ADDRESS 2760 W. State | POSITION | | |
| DUTIES Mac, Op. | SUPERVISOR'S NAME Dave | | |
| | REASON FOR LEAVING | | |
| HOURLY RATE OR SALARY 11.55 | Close | | |

| EMPLOYER | PHONE | FROM | TO |
|---|---|---|---|
| ADDRESS | POSITION | | |
| DUTIES | SUPERVISOR'S NAME | | |
| | REASON FOR LEAVING | | |
| HOURLY RATE OR SALARY | | | |

| EMPLOYER | PHONE | FROM | TO |
|---|---|---|---|
| ADDRESS | POSITION | | |
| DUTIES | SUPERVISOR'S NAME | | |
| | REASON FOR LEAVING | | |
| HOURLY RATE OR SALARY | | | |

## MILITARY SERVICE RECORD

HAVE YOU EVER SERVED IN THE US ARMED FORCES?  YES  (NO)

LIST DUTIES IN THE SERVICE, INCLUDING SPECIAL TRAINING THAT IS RELEVANT TO THE POSITION FOR WHICH YOU HAVE APPLIED:

## HEALTH

DO YOU HAVE ANY PHYSICAL OR HEALTH RESTRICTIONS THAT WOULD PREVENT YOU FROM PERFORMING THE ESSENTIAL FUNCTIONS OF YOUR JOB?  IF YES, WHAT ARE THEY? _____ NO _____

## PERSONAL REFERENCES (EXCLUDING RELATIVES):

| NAME | ADDRESS | PHONE | YEARS KNOWN |
|---|---|---|---|
| DERRICK Brown | 4110 WABASH AVE | 773-719-1504 | 4 Yrs |
| GALINDA Johnson | Chge | 708-527-1647 | 10 Yrs |
| Christina Wansberry | @ Sauk Village | 708-654-7277 | 30 Yrs |

I understand that the accuracy and completeness of my statements will be relied upon by Niagara LaSalle Corporation. I authorize investigation of all statements contained in this application and permit Niagara LaSalle Corporation to obtain any transcripts, records or documents pertaining to my background and business experience. I also agree to release Niagara LaSalle Corporation from any liability arising therefrom and understand that any misstatements, omissions, or false statements made by me may be justification of refusal of employment or, if employed, cause for dismissal.

If any employment relationship is established, I also understand that I retain the rights to terminate my employment at any time and Niagara LaSalle Corporation retains a similar right.

I acknowledge that statements, which may be contained in policies, practices, handbooks and other company material, do not create any guarantee of employment. Any promise contrary will only be relied upon by me if they are in writing and signed by an authorized company official.

I understand the company has the right to modify, amend or terminate policies, practices, benefit plans and other company programs within the limits and requirements imposed by law. Applicants will be required to submit documents to verify identity and employment authorization upon employment.

Any offer of employment I may receive from Niagara LaSalle is contingent upon satisfactory completion of any pre-employment medical examination and drug screening that Niagara LaSalle may require. I hereby consent to having the results of any pre-employment medical exams and drug screening I may be required to take disclosed to Niagara LaSalle Corporation. I also understand and agree that, if employed, I may be required to submit to an alcohol or drug screening at any time at the discretion of Niagara LaSalle Corporation which includes post injury drug screening.

SIGNATURE OF APPLICANT _____        8/22/2011
                                                           DATE



## NIAGARA LASALLE CORPORATION

### *EMPLOYMENT APPLICATION*

WE CONSIDER ALL APPLICANTS FOR ALL POSITIONS WITHOUT REGARD TO RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, MARITAL STATUS OR VETERAN STATUS, THE PRESENCE OF A NON-JOB RELATED MEDICAL CONDITION OR HANDICAP OR ANY OTHER LEGALLY PROTECTED STATUS. WE ARE AN EQUAL OPPORTUNITY EMPLOYER.

NAME: WAYNE G. FALDZINSKI       DATE: 6/20/2011

ADDRESS: 11295 EAST DR.     CITY: DEMOTTE       STATE: IN.   ZIP: 46310

PHONE NUMBER: 219-987-5737     HOME     OTHER          SOCIAL SECURITY NUMBER: ████████

WHEN ARE YOU AVAILABLE TO START WORK? 6/20/2011     ARE YOU OVER 18 YRS OF AGE? YES

HAVE YOU EVER FILED AN APPLICATION HERE BEFORE?   YES   (NO)      IF YES, WHEN? _____
DO YOU HAVE THE LEGAL RIGHT TO WORK AND REMAIN IN THE UNITED STATES?   (YES)   NO   (IF HIRED, VERIFICATION WILL BE REQUIRED BY LAW)

POSITION(S) APPLIED FOR: ANYTHING

ARE YOU WILLING TO WORK ANY SHIFT? (YES) NO   IS OVERTIME A PROBLEM?  YES (NO)  MAY WE CONTACT YOUR PRESENT EMPLOYER? (YES)  NO

INDICATE SPECIAL QUALIFICATIONS OR SKILLS: _____

| EDUCATION | NAME OF SCHOOL | LOCATION OF SCHOOL | COURSE OF STUDY | YEARS COMPLETED | DEGREE RECEIVED | DID YOU GRADUATE? |
|---|---|---|---|---|---|---|
| ELEMENTARY | PHIL SHERIDN | CHICAGO | | 8 | | YES |
| HIGH SCHOOL | BOWEN | CHICAGO | | 4 | | '' |
| COLLEGE | | | | | | |
| OTHER | | | | | | |

HAVE YOU PARTICIPATED IN AN APPRENTICESHIP PROGRAM?   YES   (NO)   WHERE? _____

WHEN? _____     KIND OF TRADE: _____

HAVE YOU EVER BEEN CONVICTED OF A CRIME ?   YES   (NO)
IF YES, LIST CONVICTIONS (A CONVICTION DOES NOT NECESSARILY DISQUALIFY AN APPLICANT FOR THE POSITION BEING APPLIED FOR)

_____
_____

IS THERE ANYTHING THAT WOULD PREVENT YOU FROM PERFORMING IN A REASONABLE AND SAFE MANNER THE ACTIVITIES INVOLVED IN THE POSITION FOR WHICH YOU HAVE APPLIED?
NO

LIST THE NAME(S) OF ANY RELATIVE(S) IN OUR EMPLOY AND YOUR RELATIONSHIP TO THEM:
NONE

**PRIOR EMPLOYMENT – START WITH MOST RECENT EMPLOYER**

| EMPLOYER | DIAMETERS SOUTH | | PHONE | | FROM | TO |
|---|---|---|---|---|---|---|
| ADDRESS | 9301 KING ST. FRANKLIN PK. | | POSITION | RECEIVING | | |
| DUTIES | RECEIVING | | SUPERVISOR'S NAME | | | |
| HOURLY RATE OR SALARY | 13.50 | | REASON FOR LEAVING PURCHASED BY NIAGARA/LASALLE | | | |

| EMPLOYER | | PHONE | | FROM | TO |
|---|---|---|---|---|---|
| ADDRESS | | POSITION | | | |
| DUTIES | | SUPERVISOR'S NAME | | | |
| HOURLY RATE OR SALARY | | REASON FOR LEAVING | | | |

| EMPLOYER | | PHONE | | FROM | TO |
|---|---|---|---|---|---|
| ADDRESS | | POSITION | | | |
| DUTIES | | SUPERVISOR'S NAME | | | |
| HOURLY RATE OR SALARY | | REASON FOR LEAVING | | | |

**MILITARY SERVICE RECORD**

HAVE YOU EVER SERVED IN THE US ARMED FORCES?    YES ( NO )

LIST DUTIES IN THE SERVICE, INCLUDING SPECIAL TRAINING THAT IS RELEVANT TO THE POSITION FOR WHICH YOU HAVE APPLIED:

**HEALTH**

DO YOU HAVE ANY PHYSICAL OR HEALTH RESTRICTIONS THAT WOULD PREVENT YOU FROM PERFORMING THE ESSENTIAL FUNCTIONS OF YOUR JOB?  IF YES, WHAT ARE THEY?  _NONE_

**PERSONAL REFERENCES (EXCLUDING RELATIVES):**

| NAME | ADDRESS | PHONE | YEARS KNOWN |
|---|---|---|---|
| MARIO | DIAMETERS -SOUTH | | 15 |
| | | | |
| | | | |

I understand that the accuracy and completeness of my statements will be relied upon by Niagara LaSalle Corporation.  I authorize investigation of all statements contained in this application and permit Niagara LaSalle Corporation to obtain any transcripts, records or documents pertaining to my background and business experience.  I also agree to release Niagara LaSalle Corporation from any liability arising therefrom and understand that any misstatements, omissions, or false statements made by me may be justification of refusal of employment or, if employed, cause for dismissal.

If any employment relationship is established, I also understand that I retain the rights to terminate my employment at any time and Niagara LaSalle Corporation retains a similar right.

I acknowledge that statements, which may be contained in policies, practices, handbooks and other company material, do not create any guarantee of employment.  Any promise contrary will only be relied upon by me if they are in writing and signed by an authorized company official.

I understand the company has the right to modify, amend or terminate policies, practices, benefit plans and other company programs within the limits and requirements imposed by law.  Applicants will be required to submit documents to verify identity and employment authorization upon employment.

Any offer of employment I may receive from Niagara LaSalle is contingent upon satisfactory completion of any pre-employment medical examination and drug screening that Niagara LaSalle may require.  I hereby consent to having the results of any pre-employment medical exams and drug screening I may be required to take disclosed to Niagara LaSalle Corporation.  I also understand and agree that, if employed, I may be required to submit to an alcohol or drug screening at any time at the discretion of Niagara LaSalle Corporation which includes post injury drug screening.

_____          _____
SIGNATURE OF APPLICANT                                              DATE





*EMPLOYMENT APPLICATION*

WE CONSIDER ALL APPLICANTS FOR ALL POSITIONS WITHOUT REGARD TO RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, MARITAL STATUS OR VETERAN STATUS, THE PRESENCE OF A NON-JOB RELATED MEDICAL CONDITION OR HANDICAP OR ANY OTHER LEGALLY PROTECTED STATUS. WE ARE AN EQUAL OPPORTUNITY EMPLOYER.

NAME: Joshua M Brawner          DATE: June 20 2011

ADDRESS: 222 S Lincoln St. CITY: Braidwood     STATE: IL  ZIP: 60408

PHONE NUMBER: _____ (815)278-2968  SOCIAL SECURITY NUMBER: ▓▓▓▓▓▓
                      HOME              OTHER

WHEN ARE YOU AVAILABLE TO START WORK? asap          ARE YOU OVER 18 YRS OF AGE? yes

HAVE YOU EVER FILED AN APPLICATION HERE BEFORE?   YES   (NO)          IF YES, WHEN? _____

DO YOU HAVE THE LEGAL RIGHT TO WORK AND REMAIN IN THE UNITED STATES?  (YES)   NO    (IF HIRED, VERIFICATION WILL BE REQUIRED BY LAW)

POSITION(S) APPLIED FOR: Crane operator

ARE YOU WILLING TO WORK ANY SHIFT? (YES) NO  IS OVERTIME A PROBLEM?  YES (NO)  MAY WE CONTACT YOUR PRESENT EMPLOYER? (YES)  NO

INDICATE SPECIAL QUALIFICATIONS OR SKILLS: forklift, crane, and saw experience

| EDUCATION | NAME OF SCHOOL | LOCATION OF SCHOOL | COURSE OF STUDY | YEARS COMPLETED | DEGREE RECEIVED | DID YOU GRADUATE? |
|---|---|---|---|---|---|---|
| ELEMENTARY | Limestone Grade | Limestone, IL | Basic | 4 | Basic | yes |
| HIGH SCHOOL | Gardner Sw Wilmington | Gardner, IL | Basic | 4 | Basic | yes |
| COLLEGE | — | — | — | — | — | — |
| OTHER | — | — | — | — | — | — |

HAVE YOU PARTICIPATED IN AN APPRENTICESHIP PROGRAM?   YES  (NO)   WHERE? _____

WHEN? _____          KIND OF TRADE: _____

HAVE YOU EVER BEEN CONVICTED OF A CRIME?   (YES)   NO

IF YES, LIST CONVICTIONS (A CONVICTION DOES NOT NECESSARILY DISQUALIFY AN APPLICANT FOR THE POSITION BEING APPLIED FOR)
    Trafficing

IS THERE ANYTHING THAT WOULD PREVENT YOU FROM PERFORMING IN A REASONABLE AND SAFE MANNER THE ACTIVITIES INVOLVED IN THE POSITION FOR WHICH YOU HAVE APPLIED?
    NO

LIST THE NAME(S) OF ANY RELATIVE(S) IN OUR EMPLOY AND YOUR RELATIONSHIP TO THEM:
    NONE

## PRIOR EMPLOYMENT – START WITH MOST RECENT EMPLOYER

| EMPLOYER Dura & Co. South | PHONE | | |
|---|---|---|---|
| ADDRESS 45 chicago heights | POSITION Shippder / recieving | FROM Oct 2011 | TO June 201 |
| DUTIES crane, saw, wisp, weigh | SUPERVISOR'S NAME Marcelo | | |
| HOURLY RATE OR SALARY 11/0 | REASON FOR LEAVING Bought out | | |

| EMPLOYER | PHONE | | |
|---|---|---|---|
| ADDRESS | POSITION | FROM | TO |
| DUTIES | SUPERVISOR'S NAME | | |
| HOURLY RATE OR SALARY | REASON FOR LEAVING | | |

| EMPLOYER | PHONE | | |
|---|---|---|---|
| ADDRESS | POSITION | FROM | TO |
| DUTIES | SUPERVISOR'S NAME | | |
| HOURLY RATE OR SALARY | REASON FOR LEAVING | | |

## MILITARY SERVICE RECORD

HAVE YOU EVER SERVED IN THE US ARMED FORCES?   YES  (NO)

LIST DUTIES IN THE SERVICE, INCLUDING SPECIAL TRAINING THAT IS RELEVANT TO THE POSITION FOR WHICH YOU HAVE APPLIED:

## HEALTH

DO YOU HAVE ANY PHYSICAL OR HEALTH RESTRICTIONS THAT WOULD PREVENT YOU FROM PERFORMING THE ESSENTIAL FUNCTIONS OF YOUR JOB?  IF YES, WHAT ARE THEY? _____

## PERSONAL REFERENCES (EXCLUDING RELATIVES):

| NAME | ADDRESS | PHONE | YEARS KNOWN |
|---|---|---|---|
| ED Stein | Crete, IL | (708) 825-8326 | 6 |
| Brittany Andrews | Braidwood  IL | (815) 685-8239 | 9 |
| Jerry Studavin | Braidwood, IL | (815) 370-5128 | 4 |

I understand that the accuracy and completeness of my statements will be relied upon by Niagara LaSalle Corporation.  I authorize investigation of all statements contained in this application and permit Niagara LaSalle Corporation to obtain any transcripts, records or documents pertaining to my background and business experience.  I also agree to release Niagara LaSalle Corporation from any liability arising therefrom and understand that any misstatements, omissions, or false statements made by me may be justification of refusal of employment or, if employed, cause for dismissal.

If any employment relationship is established, I also understand that I retain the rights to terminate my employment at any time and Niagara LaSalle Corporation retains a similar right.

I acknowledge that statements, which may be contained in policies, practices, handbooks and other company material, do not create any guarantee of employment.  Any promise contrary will only be relied upon by me if they are in writing and signed by an authorized company official.

I understand the company has the right to modify, amend or terminate policies, practices, benefit plans and other company programs within the limits and requirements imposed by law.  Applicants will be required to submit documents to verify identity and employment authorization upon employment.

Any offer of employment I may receive from Niagara LaSalle is contingent upon satisfactory completion of any pre-employment medical examination and drug screening that Niagara LaSalle may require.  I hereby consent to having the results of any pre-employment medical exams and drug screening I may be required to take disclosed to Niagara LaSalle Corporation.  I also understand and agree that, if employed, I may be required to submit to an alcohol or drug screening at any time at the discretion of Niagara LaSalle Corporation which includes post injury drug screening.

SIGNATURE OF APPLICANT _____                    DATE  June 20 2011


NIAGARA LASALLE CORPORATION

## EMPLOYMENT APPLICATION

WE CONSIDER ALL APPLICANTS FOR ALL POSITIONS WITHOUT REGARD TO RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, MARITAL STATUS OR VETERAN STATUS, THE PRESENCE OF A NON-JOB RELATED MEDICAL CONDITION OR HANDICAP OR ANY OTHER LEGALLY PROTECTED STATUS. WE ARE AN EQUAL OPPORTUNITY EMPLOYER.

NAME: Justin D Pomeroy                    DATE: 6/20/11

ADDRESS: 7362 cypress ct    CITY: Lowell    STATE: IN   ZIP: 46356

PHONE NUMBER: 1 219 713 8100    SOCIAL SECURITY NUMBER: ▓▓▓▓▓
HOME          OTHER

WHEN ARE YOU AVAILABLE TO START WORK? _____    ARE YOU OVER 18 YRS OF AGE? Yes

HAVE YOU EVER FILED AN APPLICATION HERE BEFORE?   YES   (NO)    IF YES, WHEN? _____

DO YOU HAVE THE LEGAL RIGHT TO WORK AND REMAIN IN THE UNITED STATES?   YES   NO   (IF HIRED, VERIFICATION WILL BE REQUIRED BY LAW)

POSITION(S) APPLIED FOR: _____

ARE YOU WILLING TO WORK ANY SHIFT?  YES  (NO)  IS OVERTIME A PROBLEM?  YES  (NO)  MAY WE CONTACT YOUR PRESENT EMPLOYER?  (YES)  NO

INDICATE SPECIAL QUALIFICATIONS OR SKILLS: Crane Operator

| EDUCATION | NAME OF SCHOOL | LOCATION OF SCHOOL | COURSE OF STUDY | YEARS COMPLETED | DEGREE RECEIVED | DID YOU GRADUATE? |
|---|---|---|---|---|---|---|
| ELEMENTARY | | | | | | |
| HIGH SCHOOL | Crete Monee | | Basic | 4 | Diploma | Yes |
| COLLEGE | | | | | | |
| OTHER | | | | | | |

HAVE YOU PARTICIPATED IN AN APPRENTICESHIP PROGRAM?   YES   NO   WHERE? _____

WHEN? _____    KIND OF TRADE: _____

HAVE YOU EVER BEEN CONVICTED OF A CRIME ?   YES   (NO)

IF YES, LIST CONVICTIONS (A CONVICTION DOES NOT NECESSARILY DISQUALIFY AN APPLICANT FOR THE POSITION BEING APPLIED FOR)

_____
_____

IS THERE ANYTHING THAT WOULD PREVENT YOU FROM PERFORMING IN A REASONABLE AND SAFE MANNER THE ACTIVITIES INVOLVED IN THE POSITION FOR WHICH YOU HAVE APPLIED?

_____
_____

LIST THE NAME(S) OF ANY RELATIVE(S) IN OUR EMPLOY AND YOUR RELATIONSHIP TO THEM:

_____
_____

**PRIOR EMPLOYMENT – START WITH MOST RECENT EMPLOYER**

| EMPLOYER Heat treat corp | PHONE 773 269-1234 | FROM | TO |
|---|---|---|---|
| ADDRESS | POSITION | | |
| DUTIES forklift operator, weight tag | SUPERVISOR'S NAME Rich | | |
| Steel bing Load/unload trucks | REASON FOR LEAVING | | |
| HOURLY RATE OR SALARY 9.00 | insufficient hours | | |

| EMPLOYER WMC corp | PHONE 708 388 0990 | FROM | TO |
|---|---|---|---|
| ADDRESS | POSITION | | |
| DUTIES Grinding, painting, shop cleanup | SUPERVISOR'S NAME Dave Pomeroy | | |
| | REASON FOR LEAVING | | |
| HOURLY RATE OR SALARY 9.00 | School | | |

| EMPLOYER Diameters | PHONE 708 758 6156 | FROM | TO |
|---|---|---|---|
| ADDRESS | POSITION Scale, saw, crane | | |
| DUTIES Scale, saw, crane | SUPERVISOR'S NAME Pst Chisachetti | | |
| | REASON FOR LEAVING | | |
| HOURLY RATE OR SALARY | Niagara Lasalle | | |

**MILITARY SERVICE RECORD**

HAVE YOU EVER SERVED IN THE US ARMED FORCES?   (YES)   NO

LIST DUTIES IN THE SERVICE, INCLUDING SPECIAL TRAINING THAT IS RELEVANT TO THE POSITION FOR WHICH YOU HAVE APPLIED:

left bootcamp early, was medically discharged w/ a hernia

**HEALTH**

DO YOU HAVE ANY PHYSICAL OR HEALTH RESTRICTIONS THAT WOULD PREVENT YOU FROM PERFORMING THE ESSENTIAL FUNCTIONS OF YOUR JOB?   IF YES, WHAT ARE THEY? _____

**PERSONAL REFERENCES (EXCLUDING RELATIVES):**

| NAME | ADDRESS | PHONE | YEARS KNOWN |
|---|---|---|---|
| Virginia Bowen | 7056 west thorn lane | 219 713 3288 | 6 |
| Ed Stein | — | 708 825 8326 | 10 |
| John Collinsgrove | | 708 955 1881 | |

I understand that the accuracy and completeness of my statements will be relied upon by Niagara LaSalle Corporation. I authorize investigation of all statements contained in this application and permit Niagara LaSalle Corporation to obtain any transcripts, records or documents pertaining to my background and business experience. I also agree to release Niagara LaSalle Corporation from any liability arising therefrom and understand that any misstatements, omissions, or false statements made by me may be justification of refusal of employment or, if employed, cause for dismissal.

If any employment relationship is established, I also understand that I retain the rights to terminate my employment at any time and Niagara LaSalle Corporation retains a similar right.

I acknowledge that statements, which may be contained in policies, practices, handbooks and other company material, do not create any guarantee of employment. Any promise contrary will only be relied upon by me if they are in writing and signed by an authorized company official.

I understand the company has the right to modify, amend or terminate policies, practices, benefit plans and other company programs within the limits and requirements imposed by law. Applicants will be required to submit documents to verify identity and employment authorization upon employment.

Any offer of employment I may receive from Niagara LaSalle is contingent upon satisfactory completion of any pre-employment medical examination and drug screening that Niagara LaSalle may require. I hereby consent to having the results of any pre-employment medical exams and drug screening I may be required to take disclosed to Niagara LaSalle Corporation. I also understand and agree that, if employed, I may be required to submit to an alcohol or drug screening at any time at the discretion of Niagara LaSalle Corporation which includes post injury drug screening.

SIGNATURE OF APPLICANT _____     DATE 6/27/11



## EMPLOYMENT APPLICATION

WE CONSIDER ALL APPLICANTS FOR ALL POSITIONS WITHOUT REGARD TO RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, MARITAL STATUS OR VETERAN STATUS, THE PRESENCE OF A NON-JOB RELATED MEDICAL CONDITION OR HANDICAP OR ANY OTHER LEGALLY PROTECTED STATUS. WE ARE AN EQUAL OPPORTUNITY EMPLOYER.

NAME: _ALEJANDRO GARDUNO_     DATE: _6/20/11_

ADDRESS: _16341 CARRIAGE LN_   CITY: _LANSING_   STATE: _IL_   ZIP: _60438_

PHONE NUMBER: _(708) 418-4423_ _(773) 704-6252_   SOCIAL SECURITY NUMBER: ▓▓▓▓▓▓
       HOME            OTHER

WHEN ARE YOU AVAILABLE TO START WORK? _TODAY_    ARE YOU OVER 18 YRS OF AGE? _YES_

HAVE YOU EVER FILED AN APPLICATION HERE BEFORE?   YES   (NO)     IF YES, WHEN? _____

DO YOU HAVE THE LEGAL RIGHT TO WORK AND REMAIN IN THE UNITED STATES? (YES)   NO   (IF HIRED, VERIFICATION WILL BE REQUIRED BY LAW)

POSITION(S) APPLIED FOR: _TURNER MACHINE OPERATOR_

ARE YOU WILLING TO WORK ANY SHIFT? (YES) NO   IS OVERTIME A PROBLEM? YES   NO   MAY WE CONTACT YOUR PRESENT EMPLOYER? (YES) NO

INDICATE SPECIAL QUALIFICATIONS OR SKILLS: _____

| EDUCATION | NAME OF SCHOOL | LOCATION OF SCHOOL | COURSE OF STUDY | YEARS COMPLETED | DEGREE RECEIVED | DID YOU GRADUATE? |
|---|---|---|---|---|---|---|
| ELEMENTARY | CONST. 1857 | MEXICO CITY | | 8 | YES | |
| HIGH SCHOOL | PREPA "G" | ✓ | ✓ | 3 | YES | YES |
| COLLEGE | | | | | | |
| OTHER | ICU DE MEX | ✓ | ✓ | 2 | YES | YES |

HAVE YOU PARTICIPATED IN AN APPRENTICESHIP PROGRAM?   YES   (NO)    WHERE? _____

WHEN? _____     KIND OF TRADE: _____

HAVE YOU EVER BEEN CONVICTED OF A CRIME ?   YES   (NO)

IF YES, LIST CONVICTIONS (A CONVICTION DOES NOT NECESSARILY DISQUALIFY AN APPLICANT FOR THE POSITION BEING APPLIED FOR)

_____
_____

IS THERE ANYTHING THAT WOULD PREVENT YOU FROM PERFORMING IN A REASONABLE AND SAFE MANNER THE ACTIVITIES INVOLVED IN THE POSITION FOR WHICH YOU HAVE APPLIED?

_____
_____

LIST THE NAME(S) OF ANY RELATIVE(S) IN OUR EMPLOY AND YOUR RELATIONSHIP TO THEM:

_____
_____

**REQUEST # 1, 2 & 5**

## PRIOR EMPLOYMENT – START WITH MOST RECENT EMPLOYER

**EMPLOYER** DIMETERS CORP.
**ADDRESS** 9301 KING ST
**DUTIES** RUN LWDH25 TURNER MACHINE
**HOURLY RATE OR SALARY** $17.25
**PHONE** (208) 758-6756
**POSITION** TURNER MACHINE OPERATOR **FROM** 7/01/01 **TO** 6/28/11
**SUPERVISOR'S NAME** MARIO C
**REASON FOR LEAVING**

**EMPLOYER** BAR PROCESSING
**ADDRESS**
**DUTIES** RUN A SHALL TURNER MACHINE
**HOURLY RATE OR SALARY**
**PHONE**
**POSITION** TURNER MACHINE OPERATOR **FROM** 5/01/00 **TO** 03/31/01
**SUPERVISOR'S NAME**
**REASON FOR LEAVING** LAYED OFF

**EMPLOYER** UNIVERSAL METAL
**ADDRESS** 16655 S. CANAL ST
**DUTIES** RUN 3 TURNER MACHINES
**HOURLY RATE OR SALARY**
**PHONE**
**POSITION** TURNER MACHINE OPERATOR **FROM** 03/15/97 **TO** 01/30/00
**SUPERVISOR'S NAME** HONORIO SUAREZ
**REASON FOR LEAVING** NEW JOB

## MILITARY SERVICE RECORD

HAVE YOU EVER SERVED IN THE US ARMED FORCES?     YES   (NO)

LIST DUTIES IN THE SERVICE, INCLUDING SPECIAL TRAINING THAT IS RELEVANT TO THE POSITION FOR WHICH YOU HAVE APPLIED:

## HEALTH

DO YOU HAVE ANY PHYSICAL OR HEALTH RESTRICTIONS THAT WOULD PREVENT YOU FROM PERFORMING THE ESSENTIAL FUNCTIONS OF YOUR JOB?  IF YES, WHAT ARE THEY? _____

## PERSONAL REFERENCES (EXCLUDING RELATIVES):

| NAME | ADDRESS | PHONE | YEARS KNOWN |
|------|---------|-------|-------------|
| ARMANDO SOLANO | 10546 S TORRENCE AV. | (773) 768-5093 | 30 |
| EDWARD ZIELINSKY | 160 JENIFER LN | (708) 351-8077 | 16 |

I understand that the accuracy and completeness of my statements will be relied upon by Niagara LaSalle Corporation. I authorize investigation of all statements contained in this application and permit Niagara LaSalle Corporation to obtain any transcripts, records or documents pertaining to my background and business experience. I also agree to release Niagara LaSalle Corporation from any liability arising therefrom and understand that any misstatements, omissions, or false statements made by me may be justification of refusal of employment or, if employed, cause for dismissal.

If any employment relationship is established, I also understand that I retain the rights to terminate my employment at any time and Niagara LaSalle Corporation retains a similar right.

I acknowledge that statements, which may be contained in policies, practices, handbooks and other company material, do not create any guarantee of employment. Any promise contrary will only be relied upon by me if they are in writing and signed by an authorized company official.

I understand the company has the right to modify, amend or terminate policies, practices, benefit plans and other company programs within the limits and requirements imposed by law. Applicants will be required to submit documents to verify identity and employment authorization upon employment.

Any offer of employment I may receive from Niagara LaSalle is contingent upon satisfactory completion of any pre-employment medical examination and drug screening that Niagara LaSalle may require. I hereby consent to having the results of any pre-employment medical exams and drug screening I may be required to take disclosed to Niagara LaSalle Corporation. I also understand and agree that, if employed, I may be required to submit to an alcohol or drug screening at any time at the discretion of Niagara LaSalle Corporation which includes post injury drug screening.

SIGNATURE OF APPLICANT                              6/30/11
DATE



**NIAGARA LASALLE CORPORATION**

*EMPLOYMENT APPLICATION*

WE CONSIDER ALL APPLICANTS FOR ALL POSITIONS WITHOUT REGARD TO RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, MARITAL STATUS OR VETERAN STATUS, THE PRESENCE OF A NON-JOB RELATED MEDICAL CONDITION OR HANDICAP OR ANY OTHER LEGALLY PROTECTED STATUS. WE ARE AN EQUAL OPPORTUNITY EMPLOYER.

NAME: Edward W. Stein        DATE: 6-20-11

ADDRESS: 2034 E. Oak St.   CITY: Crete   STATE: IL   ZIP: 60417

PHONE NUMBER: (708) 825-8326   HOME   OTHER        SOCIAL SECURITY NUMBER: ▓▓▓▓▓

WHEN ARE YOU AVAILABLE TO START WORK? Today        ARE YOU OVER 18 YRS OF AGE? yes

HAVE YOU EVER FILED AN APPLICATION HERE BEFORE?   YES   (NO)        IF YES, WHEN? _____

DO YOU HAVE THE LEGAL RIGHT TO WORK AND REMAIN IN THE UNITED STATES?   (YES)   NO   (IF HIRED, VERIFICATION WILL BE REQUIRED BY LAW)

POSITION(S) APPLIED FOR: Machine operator

ARE YOU WILLING TO WORK ANY SHIFT? (YES)  NO   IS OVERTIME A PROBLEM?   YES   (NO)   MAY WE CONTACT YOUR PRESENT EMPLOYER? (YES)  NO

INDICATE SPECIAL QUALIFICATIONS OR SKILLS: _____

| EDUCATION | NAME OF SCHOOL | LOCATION OF SCHOOL | COURSE OF STUDY | YEARS COMPLETED | DEGREE RECEIVED | DID YOU GRADUATE? |
|---|---|---|---|---|---|---|
| ELEMENTARY | St. Liborius | Steger, IL. | General | 10 | | yes |
| HIGH SCHOOL | Marian Catholic | Chicago Heights | General | 4 | | yes |
| COLLEGE | Prairie St. | Chicago Heights | Automotive | 2 | | no |
| OTHER | | | & General Ed. | | | |

HAVE YOU PARTICIPATED IN AN APPRENTICESHIP PROGRAM?   (YES)   NO   WHERE? Chicago

WHEN? 2008        KIND OF TRADE: Union laborer

HAVE YOU EVER BEEN CONVICTED OF A CRIME ?   YES   (NO)

IF YES, LIST CONVICTIONS (A CONVICTION DOES NOT NECESSARILY DISQUALIFY AN APPLICANT FOR THE POSITION BEING APPLIED FOR)

_____

_____

IS THERE ANYTHING THAT WOULD PREVENT YOU FROM PERFORMING IN A REASONABLE AND SAFE MANNER THE ACTIVITIES INVOLVED IN THE POSITION FOR WHICH YOU HAVE APPLIED?

No

LIST THE NAME(S) OF ANY RELATIVE(S) IN OUR EMPLOY AND YOUR RELATIONSHIP TO THEM:

_____

_____

**PRIOR EMPLOYMENT – START WITH MOST RECENT EMPLOYER**

| EMPLOYER Diameter Corp. | PHONE (708)758-6156 | FROM | TO |
|---|---|---|---|
| ADDRESS 2910 State St. Chicago Heights | POSITION Operator | | |
| DUTIES Operate Machines | SUPERVISOR'S NAME Mario | | |
| | REASON FOR LEAVING | | |
| HOURLY RATE OR SALARY 1200 | | | |

| EMPLOYER | PHONE | FROM | TO |
|---|---|---|---|
| ADDRESS | POSITION | | |
| DUTIES | SUPERVISOR'S NAME | | |
| | REASON FOR LEAVING | | |
| HOURLY RATE OR SALARY | | | |

| EMPLOYER | PHONE | FROM | TO |
|---|---|---|---|
| ADDRESS | POSITION | | |
| DUTIES | SUPERVISOR'S NAME | | |
| | REASON FOR LEAVING | | |
| HOURLY RATE OR SALARY | | | |

**MILITARY SERVICE RECORD**

HAVE YOU EVER SERVED IN THE US ARMED FORCES?     YES     (NO)

LIST DUTIES IN THE SERVICE, INCLUDING SPECIAL TRAINING THAT IS RELEVANT TO THE POSITION FOR WHICH YOU HAVE APPLIED:

**HEALTH**

DO YOU HAVE ANY PHYSICAL OR HEALTH RESTRICTIONS THAT WOULD PREVENT YOU FROM PERFORMING THE ESSENTIAL FUNCTIONS OF YOUR JOB?   IF YES, WHAT ARE THEY? __NO__

**PERSONAL REFERENCES (EXCLUDING RELATIVES):**

| NAME | ADDRESS | PHONE | YEARS KNOWN |
|---|---|---|---|
| Nicole Androscavage | | (708)420-6964 | 8 |
| Justin Pomeroy | | (219)552-1054 | 9 |
| Rob Howard | | (708)205-1191 | 7 |

I understand that the accuracy and completeness of my statements will be relied upon by Niagara LaSalle Corporation.  I authorize investigation of all statements contained in this application and permit Niagara LaSalle Corporation to obtain any transcripts, records or documents pertaining to my background and business experience.  I also agree to release Niagara LaSalle Corporation from any liability arising therefrom and understand that any misstatements, omissions, or false statements made by me may be justification of refusal of employment or, if employed, cause for dismissal.

If any employment relationship is established, I also understand that I retain the rights to terminate my employment at any time and Niagara LaSalle Corporation retains a similar right.

I acknowledge that statements, which may be contained in policies, practices, handbooks and other company material, do not create any guarantee of employment.  Any promise contrary will only be relied upon by me if they are in writing and signed by an authorized company official.

I understand the company has the right to modify, amend or terminate policies, practices, benefit plans and other company programs within the limits and requirements imposed by law.  Applicants will be required to submit documents to verify identity and employment authorization upon employment.

Any offer of employment I may receive from Niagara LaSalle is contingent upon satisfactory completion of any pre-employment medical examination and drug screening that Niagara LaSalle may require.  I hereby consent to having the results of any pre-employment medical exams and drug screening I may be required to take disclosed to Niagara LaSalle Corporation.  I also understand and agree that, if employed, I may be required to submit to an alcohol or drug screening at any time at the discretion of Niagara LaSalle Corporation which includes post injury drug screening.

SIGNATURE OF APPLICANT                                                                 6-20-11
                                                                                                        DATE



**NIAGARA LASALLE CORPORATION**

### *EMPLOYMENT APPLICATION*

WE CONSIDER ALL APPLICANTS FOR ALL POSITIONS WITHOUT REGARD TO RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, MARITAL STATUS OR VETERAN STATUS, THE PRESENCE OF A NON-JOB RELATED MEDICAL CONDITION OR HANDICAP OR ANY OTHER LEGALLY PROTECTED STATUS. WE ARE AN EQUAL OPPORTUNITY EMPLOYER.

NAME: _Roy Miller_    DATE: _7-20-11_

ADDRESS: _1730 56Ave_    CITY: _Hobart_    STATE: _Ind_    ZIP: _46342_

PHONE NUMBER: _214-617 3874_    HOME / OTHER    SOCIAL SECURITY NUMBER: ▓▓▓▓▓

WHEN ARE YOU AVAILABLE TO START WORK? _7-20-11_    ARE YOU OVER 18 YRS OF AGE? _yes_

HAVE YOU EVER FILED AN APPLICATION HERE BEFORE?    YES    (NO)    IF YES, WHEN? _____

DO YOU HAVE THE LEGAL RIGHT TO WORK AND REMAIN IN THE UNITED STATES?    YES    NO    (IF HIRED, VERIFICATION WILL BE REQUIRED BY LAW)

POSITION(S) APPLIED FOR: _____

ARE YOU WILLING TO WORK ANY SHIFT?  YES  NO  IS OVERTIME A PROBLEM?  YES  NO  MAY WE CONTACT YOUR PRESENT EMPLOYER?  YES  NO

INDICATE SPECIAL QUALIFICATIONS OR SKILLS: _____

| EDUCATION | NAME OF SCHOOL | LOCATION OF SCHOOL | COURSE OF STUDY | YEARS COMPLETED | DEGREE RECEIVED | DID YOU GRADUATE? |
|---|---|---|---|---|---|---|
| ELEMENTARY | | | | | | |
| HIGH SCHOOL | | | | | | |
| COLLEGE | | | | | | |
| OTHER | | | | | | |

HAVE YOU PARTICIPATED IN AN APPRENTICESHIP PROGRAM?   YES   NO   WHERE? _____

WHEN? _____    KIND OF TRADE: _____

HAVE YOU EVER BEEN CONVICTED OF A CRIME ?    YES    (NO)

IF YES, LIST CONVICTIONS (A CONVICTION DOES NOT NECESSARILY DISQUALIFY AN APPLICANT FOR THE POSITION BEING APPLIED FOR)

_____

_____

IS THERE ANYTHING THAT WOULD PREVENT YOU FROM PERFORMING IN A REASONABLE AND SAFE MANNER THE ACTIVITIES INVOLVED IN THE POSITION FOR WHICH YOU HAVE APPLIED?

_NO_

_____

LIST THE NAME(S) OF ANY RELATIVE(S) IN OUR EMPLOY AND YOUR RELATIONSHIP TO THEM:

_____

_____

## PRIOR EMPLOYMENT – START WITH MOST RECENT EMPLOYER

| EMPLOYER | | PHONE | | FROM | TO |
|---|---|---|---|---|---|
| ADDRESS | | POSITION | | | |
| DUTIES | | SUPERVISOR'S NAME | | | |
| HOURLY RATE OR SALARY | | REASON FOR LEAVING | | | |

| EMPLOYER | | PHONE | | FROM | TO |
|---|---|---|---|---|---|
| ADDRESS | | POSITION | | | |
| DUTIES | | SUPERVISOR'S NAME | | | |
| HOURLY RATE OR SALARY | | REASON FOR LEAVING | | | |

| EMPLOYER | | PHONE | | FROM | TO |
|---|---|---|---|---|---|
| ADDRESS | | POSITION | | | |
| DUTIES | | SUPERVISOR'S NAME | | | |
| HOURLY RATE OR SALARY | | REASON FOR LEAVING | | | |

## MILITARY SERVICE RECORD

HAVE YOU EVER SERVED IN THE US ARMED FORCES?   YES   ⓃO

LIST DUTIES IN THE SERVICE, INCLUDING SPECIAL TRAINING THAT IS RELEVANT TO THE POSITION FOR WHICH YOU HAVE APPLIED:

_____

## HEALTH

DO YOU HAVE ANY PHYSICAL OR HEALTH RESTRICTIONS THAT WOULD PREVENT YOU FROM PERFORMING THE ESSENTIAL FUNCTIONS OF YOUR JOB?   IF YES, WHAT ARE THEY? _____

## PERSONAL REFERENCES (EXCLUDING RELATIVES):

| NAME | ADDRESS | PHONE | YEARS KNOWN |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

I understand that the accuracy and completeness of my statements will be relied upon by Niagara LaSalle Corporation. I authorize investigation of all statements contained in this application and permit Niagara LaSalle Corporation to obtain any transcripts, records or documents pertaining to my background and business experience. I also agree to release Niagara LaSalle Corporation from any liability arising therefrom and understand that any misstatements, omissions, or false statements made by me may be justification of refusal of employment or, if employed, cause for dismissal.

If any employment relationship is established, I also understand that I retain the rights to terminate my employment at any time and Niagara LaSalle Corporation retains a similar right.

I acknowledge that statements, which may be contained in policies, practices, handbooks and other company material, do not create any guarantee of employment. Any promise contrary will only be relied upon by me if they are in writing and signed by an authorized company official.

I understand the company has the right to modify, amend or terminate policies, practices, benefit plans and other company programs within the limits and requirements imposed by law. Applicants will be required to submit documents to verify identity and employment authorization upon employment.

Any offer of employment I may receive from Niagara LaSalle is contingent upon satisfactory completion of any pre-employment medical examination and drug screening that Niagara LaSalle may require. I hereby consent to having the results of any pre-employment medical exams and drug screening I may be required to take disclosed to Niagara LaSalle Corporation. I also understand and agree that, if employed, I may be required to submit to an alcohol or drug screening at any time at the discretion of Niagara LaSalle Corporation which includes post injury drug screening.

_Kay Miller_
SIGNATURE OF APPLICANT

_7-20-11_
DATE



**NIAGARA LASALLE CORPORATION**

## EMPLOYMENT APPLICATION

WE CONSIDER ALL APPLICANTS FOR ALL POSITIONS WITHOUT REGARD TO RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, MARITAL STATUS OR VETERAN STATUS, THE PRESENCE OF A NON-JOB RELATED MEDICAL CONDITION OR HANDICAP OR ANY OTHER LEGALLY PROTECTED STATUS.  WE ARE AN EQUAL OPPORTUNITY EMPLOYER.

NAME: *Patrick Cianchetti*    DATE: *9-27-11*

ADDRESS: *15781 E 3500 N RD*    CITY: *Momence*    STATE: *IL*    ZIP: *60954*

PHONE NUMBER: *708-227-0694*  HOME    OTHER    SOCIAL SECURITY NUMBER: ▬▬▬▬

WHEN ARE YOU AVAILABLE TO START WORK? *today*    ARE YOU OVER 18 YRS OF AGE? *YES*

HAVE YOU EVER FILED AN APPLICATION HERE BEFORE?    YES    (NO)    IF YES, WHEN? _____

DO YOU HAVE THE LEGAL RIGHT TO WORK AND REMAIN IN THE UNITED STATES?    (YES)    NO    (IF HIRED, VERIFICATION WILL BE REQUIRED BY LAW)

POSITION(S) APPLIED FOR: *ANY*

ARE YOU WILLING TO WORK ANY SHIFT? (YES) NO   IS OVERTIME A PROBLEM?  YES (NO)  MAY WE CONTACT YOUR PRESENT EMPLOYER? (YES) NO

INDICATE SPECIAL QUALIFICATIONS OR SKILLS: *Worked As Night Supervisor in cold Finish mills*

| EDUCATION | NAME OF SCHOOL | LOCATION OF SCHOOL | COURSE OF STUDY | YEARS COMPLETED | DEGREE RECEIVED | DID YOU GRADUATE? |
|---|---|---|---|---|---|---|
| ELEMENTARY | MT. Carmel | CHgo Hts, il | All Required | 8 | Yes | Yes |
| HIGH SCHOOL | Marian High | CHgo. Hts. il | All Required | 4 | Diploma | Yes |
| COLLEGE | Prine State. | CHgo Hts. IL | Computer Programming | 2 | NO | NO |
| OTHER | | | | | | |

HAVE YOU PARTICIPATED IN AN APPRENTICESHIP PROGRAM?    YES    (NO)    WHERE? _____

WHEN? _____    KIND OF TRADE: _____

HAVE YOU EVER BEEN CONVICTED OF A CRIME ?    YES    (NO)

IF YES, LIST CONVICTIONS (A CONVICTION DOES NOT NECESSARILY DISQUALIFY AN APPLICANT FOR THE POSITION BEING APPLIED FOR)

IS THERE ANYTHING THAT WOULD PREVENT YOU FROM PERFORMING IN A REASONABLE AND SAFE MANNER THE ACTIVITIES INVOLVED IN THE POSITION FOR WHICH YOU HAVE APPLIED?

*NO*

LIST THE NAME(S) OF ANY RELATIVE(S) IN OUR EMPLOY AND YOUR RELATIONSHIP TO THEM:

*MARIO CIANCHETTI JR    BROTHER*

## PRIOR EMPLOYMENT – START WITH MOST RECENT EMPLOYER

| EMPLOYER | | |
|---|---|---|
| ADDRESS | IMBETRIS SOUTH CURL | PHONE 708 75 X 6156 · FROM 2005 TO 2011 |
| | 2910 SOUTH ST STREET | POSITION |
| DUTIES | NIGHT FOREMAN | SUPERVISOR'S NAME MARIO CIANCHETI |
| | | REASON FOR LEAVING |
| HOURLY RATE OR SALARY | 17.25 | Bought out |

| EMPLOYER | | |
|---|---|---|
| ADDRESS | ALLIANCE MID WEST TUBE COMPANY | PHONE 708-753-2200 FROM 1999 TO 2005 |
| DUTIES | | POSITION DRAW BENCH OPERATOR |
| | | SUPERVISOR'S NAME Scott Wellman |
| | | REASON FOR LEAVING |
| HOURLY RATE OR SALARY | | SHUT DOWN. |

| EMPLOYER | DYNA BAR | |
|---|---|---|
| ADDRESS | | PHONE 708 759 6157 FROM 1994 TO 1999 |
| DUTIES | | POSITION GENERAL FOREMAN |
| | | SUPERVISOR'S NAME MARIO CIANCHETI |
| | | REASON FOR LEAVING |
| HOURLY RATE OR SALARY | | Bought out |

## MILITARY SERVICE RECORD

HAVE YOU EVER SERVED IN THE US ARMED FORCES?   YES   (NO)

LIST DUTIES IN THE SERVICE, INCLUDING SPECIAL TRAINING THAT IS RELEVANT TO THE POSITION FOR WHICH YOU HAVE APPLIED:

_____

## HEALTH

DO YOU HAVE ANY PHYSICAL OR HEALTH RESTRICTIONS THAT WOULD PREVENT YOU FROM PERFORMING THE ESSENTIAL FUNCTIONS OF YOUR JOB?   IF YES, WHAT ARE THEY? _____

## PERSONAL REFERENCES (EXCLUDING RELATIVES):

| NAME | ADDRESS | PHONE | YEARS KNOWN |
|---|---|---|---|
| EDWARD HUDNALL | 15798 E 3500 N RD | 1815-472-2295 | 11 |
| | MOMENCE IL | | |
| | L 0954 | | |

I understand that the accuracy and completeness of my statements will be relied upon by Niagara LaSalle Corporation. I authorize investigation of all statements contained in this application and permit Niagara LaSalle Corporation to obtain any transcripts, records or documents pertaining to my background and business experience. I also agree to release Niagara LaSalle Corporation from any liability arising therefrom and understand that any misstatements, omissions, or false statements made by me may be justification of refusal of employment or, if employed, cause for dismissal.

If any employment relationship is established, I also understand that I retain the rights to terminate my employment at any time and Niagara LaSalle Corporation retains a similar right.

I acknowledge that statements, which may be contained in policies, practices, handbooks and other company material, do not create any guarantee of employment. Any promise contrary will only be relied upon by me if they are in writing and signed by an authorized company official.

I understand the company has the right to modify, amend or terminate policies, practices, benefit plans and other company programs within the limits and requirements imposed by law. Applicants will be required to submit documents to verify identity and employment authorization upon employment.

Any offer of employment I may receive from Niagara LaSalle is contingent upon satisfactory completion of any pre-employment medical examination and drug screening that Niagara LaSalle may require. I hereby consent to having the results of any pre-employment medical exams and drug screening I may be required to take disclosed to Niagara LaSalle Corporation. I also understand and agree that, if employed, I may be required to submit to an alcohol or drug screening at any time at the discretion of Niagara LaSalle Corporation which includes post injury drug screening.

SIGNATURE OF APPLICANT _____     DATE 10-14-11